[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 26, 2008
THOMAS K. KAHN
CLERK

No. 07-15872
Non-Argument Calendar

_____

Agency No. 04-163-ARB CASE NO. & ALJ  NO.2003-A

RIAD MAJALI,

Petitioner,

versus

U.S. DEPARTMENT OF LABOR,

Respondent,

AIRTRAN AIRLINES,

Intervenor.

_____

Petition for Review of a Decision of the
Department of Labor

_____

**(September 26, 2008)**

Before ANDERSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

This is a petition for review of an administrative adjudication by the Department of Labor's Administrative Review Board. The Board reviewed and sustained an ALJ's determination, reached after a two-day evidentiary hearing, that petitioner Riad Majali was not fired by Airtran Airlines in retaliation for reporting a safety violation to the Federal Aviation Administration. We deny the petition.

**I.**[1]

Petitioner Riad Majali was employed as a Manager of Maintenance Planning for intervenor AirTran Airlines, a commercial airline. Prior to working for AirTran, petitioner was a mechanic with Continental Airlines for thirteen years. Petitioner supervised a staff of five, including Christine O'Sullivan and Reuben Wenger; he reported to Jim Buckalew.

---

[1] Our recitation of the events is based on the factual findings of the ALJ, affirmed by the Board. When conducting APA review of a formal adjudication by an administrative agency, we adhere to the agency's factual conclusions unless they are unsupported by substantial evidence in the administrative record as a whole. See 5 U.S.C. § 706(2)(E). The substantial evidence standard is merely "a recitation of the arbitrary and capricious standard to factual findings;" Fields v. U.S. Dept. of Labor Admin. Rev. Bd., 173 F.3d 811, 813 (11th Cir. 1999); it is "more than a scintilla and is such evidence as a reasonable person would accept as adequate to support a conclusion." Fluor Daniel v. Occupational Safety & Health Review Comm'n, 295 F.3d 1232, 1236 (11th Cir. 2002). There may be substantial evidence to support a factual conclusion even if the evidence preponderates the other way, or if we would reach the opposite conclusion were we to reweigh the evidence ourselves. Baker on Behalf of Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

FAA regulations require commercial aircraft to undergo maintenance checks at specified time intervals of flying. Once an aircraft has flown sufficient hours to require a maintenance check, it is in "overfly" status and thereafter cannot be used to transport commercial passengers ("revenue flights"). It may, however, be flown without passengers to a different location to be serviced ("ferry flights").

Petitioner was charged with keeping up the "overdue report," a document which listed the number of hours until each aircraft was in overfly status. For reasons not pertinent here, on February 24, 2002 an AirTran plane had its maintenance checks rescheduled and postponed, with the result that it entered overfly status. Yet due to an oversight by one of petitioner's staff, the plane continued to make revenue flights. O'Sullivan, petitioner's subordinate, noticed that the plane was in overflight status and notified petitioner. Petitioner directed that a maintenance check be performed in Atlanta, but it turned out that the Atlanta crew did not have certain equipment needed to do the check. So Buckalew, petitioner's supervisor, directed the plane be ferried to Miami to do the maintenance check. For reasons unclear from the record, the plane was not ferried to Miami, but was instead flown as a revenue flight (*i.e.* with passengers). Once in Miami, the plane was serviced.

AirTran conducted an internal investigation of the overflight; it

3

contemporaneously self-reported some other overflights to the FAA. It did not self-report the February 2002 overflight; AirTran contends this overflight was omitted due to oversight. While the investigation was pending, petitioner wrote an email to Buckalew on March 15, 2002, which criticized AirTran's maintenance department and noted that the overflight was "illegal and unsafe." AirTran's internal investigation, however, put part of the blame for the overflight on petitioner's department for not ensuring that no revenue flights were undertaken until after the required maintenance check. The investigation also recommended that petitioner's department be subjected to further training about maintaining the overdue report. Shortly thereafter, petitioner received a formal reprimand from Buckalew, his immediate supervisor, for not properly maintaining the overdue report. Petitioner responded to the reprimand with an email of his own, stating that his subordinate O'Sullivan's oversight, not any negligence on his part in maintaining the overdue report, was to blame for the overflight.

At that time, petitioner was scheduled to take a vacation from June 23 to July 7 to visit his sick mother abroad. Shortly before he left, petitioner emailed Buckalew to ask whether he could extend his vacation an extra three days, through July 10, by switching shifts with certain other AirTran staffers. Buckalew refused, and scheduled petitioner to work July 8-10. Petitioner did not appear for work on

4

those three days.  Buckalew contacted AirTran's Vice President of Human Resources, Loral Blinde, who arranged a meeting between Buckalew and petitioner for July 15 to discuss the situation.  Buckalew prepared an evaluation of petitioner's work for the meeting, rating it as generally poor.  On July 13, Buckalew called petitioner and told him not to come to work on July 14 (petitioner's next scheduled shift), but instead to come on July 15 for the meeting with Human Resources.

Petitioner appeared for the meeting.  Buckalew and Blinde confronted petitioner about his unexcused absence; petitioner responded that he believed Buckalew had given him permission to take July 8-10 off.  Petitioner also contended that Buckalew had treated him unfairly since the overflight incident described above.  Blinde said he would look into petitioner's allegations, but asked him not to come to work while the inquiry was pending.  The next day, July 16, 2002, petitioner retained an attorney.  The attorney told AirTran that petitioner believed he had been wrongfully fired and would not accept reinstatement.  Blinde responded by calling petitioner and his attorney and explaining that petitioner had not been fired. (Indeed, petitioner continued to draw salary and benefits during this time.)  Petitioner was also informed by letter that he should return to work on July 24 or he would be placed on unpaid leave.  Petitioner did not come to work

5

on July 24, and hence was placed on unpaid leave. Thereafter, on July 29, petitioner wrote to AirTran's CEO and asked him to investigate the "corruption in the maintenance department led by Mr. Buckalew."

On August 5, petitioner wrote Blinde and stated that he did not object to returning to work, but only on certain conditions, including a written guarantee against retaliation, a demand that the perceived retaliation against him stop, and a reservation of his right to complaint to the FAA and others about his perceived constructive termination. Blinde stated that he could not speak to petitioner because petitioner was represented by counsel. Petitioner fired his attorney and informed Blinde two days later that he wanted to negotiate a settlement agreement.

On August 8, petitioner emailed a proposed settlement offer to Blinde. The terms of the proposal included three years of pay, a favorable letter of recommendation, a year of medical benefits, and six months of flight privileges. Blinde rejected the offer. On August 14, petitioner informed Blinde that he had filed a complaint with the EEOC and that he also planned to file a complaint with the FAA. Then, on August 16, petitioner wrote another letter to Blinde offering to return to work so long as he did not have to sign any releases. Blinde did not respond; he later stated that he did not accept petitioner's offer "because at that point it was fruitless to have him come back because of the demands he continued

6

to make." Petitioner then sent a letter to the FAA describing the February 24, 2002 revenue overflight from Atlanta to Miami. Later, on October 11, 2002, petitioner complained to OSHA that he had been constructively discharged for reporting the overflight.

On October 23, petitioner informed Blinde of the OSHA complaint by email, and offered to drop his retaliation complaint in exchange for reinstatement or a settlement package of four months pay, and flight benefits and health benefits for one year or until he found a new job. Blinde did not respond. A week later, petitioner retracted his offer, then renewed it the next day. Blinde counteroffered with two months pay, two months benefits and travel, and COBRA continuation benefits for eighteen months, in exchange for petitioner's release of all claims. Petitioner rejected the counteroffer. On November 4, 2002, petitioner became aware that the FAA was investigating the overflight he reported, and emailed Blinde again. He reiterated his demand for four months pay as part of a settlement. Blinde again refused.

The FAA opened an investigation of the Atlanta-to-Miami overflight reported by petitioner in February 2003. It interviewed numerous AirTran employees, including O'Sullivan. O'Sullivan told the FAA that petitioner asked her to falsify a document to hide the overflight, although she refused. (Petitioner

7

denied making any such demand.) AirTran was apparently unaware that petitioner asked O'Sullivan to do this until it received the transcripts of O'Sullivan's interview with the FAA. AirTran did not investigate the matter on its own, but nonetheless wrote the FAA on March 31, 2003, condemning petitioner's actions as "inexcusable" and stating that AirTran would fire petitioner.

On April 25, 2003, AirTran officially fired petitioner. The termination letter cited "disregarding [his] regulatory responsibilities" and "ordering a subordinate to falsify a maintenance document" as the causes. The letter did not mention petitioner's prolonged absence from work or the protracted, hostile negotiations. Petitioner responded by filing a second complaint with OSHA alleging retaliatory discharge.

The two complaints were consolidated for hearing before an ALJ. After a two day evidentiary hearing, the ALJ concluded that petitioner engaged in several instances of protected conduct[2] and suffered two adverse employment actions (formal suspension and firing), but did not demonstrate that the protected conduct was a "contributing factor" to either adverse employment action. The ALJ held

_____

[2] As explained infra section II., an airline employee who reports certain safety problems to the FAA is protected from retaliation by federal law. The protected conduct at issue here consists of petitioner's letter to the FAA about the overflight, his generalized complaint to AirTran's CEO, and his memo about the overflight to Buckalew.

that the suspension was based on petitioner's failure to return to work on July 24, 2002, not on his protected activities. And she concluded that petitioner's termination was also based on legitimate reasons: the fact that petitioner had not been to work in ten months, and the protracted series of negotiations and demands he made. Hence, the ALJ concluded that AirTran had established legitimate reasons for its actions, which petitioner had not shown to be pretextual.[3]

Petitioner then sought review of the ALJ's determination before the Board. The Board essentially accepted the ALJ's factual conclusions. It also rejected two of AirTran's proffered reasons for firing petitioner: his lengthy absence from work and the purported falsification. But the Board affirmed the ALJ's conclusion that the protracted and often hostile negotiations between petitioner and AirTran, not petitioner's protected activity, led to his termination. This petition for review ensued.

## II.

Federal law prohibits airlines from discharging certain employees, or discriminating against them with respect to the terms or conditions of employment, based on certain protected activities. See 49 U.S.C. § 42121(a).

---

[3] The ALJ did discard some of the non-retaliatory reasons put forth by AirTran, however, namely petitioner's purported attempts to convince O'Sullivan to falsify a document. The ALJ credited petitioner's testimony that he made no such request.

9

Among the protected activities are that an employee (i) provided information to the federal government about a violation of federal air safety laws or (ii) initiated safety-related proceedings with the FAA. Id. § 42121(a)(1)-(2). This anti-retaliation statute is more protective of plaintiff-employees than many similar measures, in two important ways. First, the complaining employee need only show that his protected activity "was a contributing factor" in the retaliatory discharge or discrimination, not the sole or even predominant cause. 49 U.S.C. §§ 42121(b)(2)(B)(i), (iii). In other words, if a retaliatory motive "tends to affect in any way the outcome of the decision" to take an adverse action against an employee, the statutory protections apply. See Allen v. Admin. Rev. Bd., 514 F.3d 468, 476 n.3 (5th Cir. 2008); Marano v. Dept. of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993) (construing the Whistleblower Protection Act, another anti-retaliation statute which employs the "contributing factor" standard). Hence, an employee covered by the statute bears the burden of "demonstrating"[4] these elements of a prima facie case: (i) that he engaged in protected activity, (ii) that he suffered discharge or discrimination in the terms or conditions of his employment, and (iii)

---

[4] The record reflects that the Department of Labor has interpreted "demonstrate" in this context to mean "prove by a preponderance of the evidence." Petitioner does not argue otherwise. See also Dysert v. Sec'y of Labor, 105 F.3d 607, 610 (11th Cir. 1997) (identical interpretation of "demonstrate" in another whistleblower protection statute).

that the protected activity was a contributing factor in the adverse employment action.[5]

Second, once a prima facie case of retaliation is made, an employer may nonetheless prevail by showing "the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]," but it must make this showing by clear and convincing evidence. 49 U.S.C. §§ 42121(b)(2)(B)(ii), (iv). The statute makes clear that the ultimate burden of persuasion on this issue remains with the employer: "relief may not be ordered . . . *if the employer demonstrates* by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [protected activity]." Id. § 42121(b)(2)(B)(iv) (emphasis added). Compare id. § 42121(b)(2)(B)(iii) (complainant bears burden of demonstrating protected activity, unfavorable personnel action, and causation).

Once administrative review before the Secretary[6] is complete, venue and

---

[5] The Fifth Circuit has stated as a separate element of the prima face case that the employer knew the employee engaged in protected activity. Allen v. Admin. Rev. Bd., 514 F.3d 468, 475-76 (5th Cir. 2008). We think such a showing is implicit in the "contributing factor" element; protected activity of which the employer was unaware could not have contributed to any adverse retaliatory action as a matter of law.

[6] The Secretary has delegated his authority to issue final orders in cases arising under this statute to the Administrative Review Board. 67 Fed. Reg. 64,272 (Oct. 17, 2002). We have not elaborated further on the administrative procedure governing such claims, as there is no question it was followed.

11

jurisdiction to review a final Order of the Secretary lie in this court pursuant to 49 U.S.C. § 42121(b)(4)(A), which permits "any person aggrieved or affected" by the order to file a petition in the Circuit where the complainant resides. Our review is pursuant to the standards set forth in the Administrative Procedure Act. Id. Petitioner alleges two bases for relief under the APA: (i) that the administrative proceedings were contrary to law, see 5 U.S.C. § 706(2)(A), in that the ALJ and Administrative Review Board applied incorrect legal standards, and (ii) that the ALJ's factual conclusion that his protected activity did not contribute to his firing is not supported by substantial evidence in the administrative record. See 5 U.S.C. § 706(2)(E). We address each in turn.

Petitioner first argues that both the ALJ and the Board erred by making him disprove the non-retaliatory reason AirTran proffered for firing him. He argues that he made out a prima facie case of retaliation, and that the burden of persuasion remained on AirTran to show clearly and convincingly that it would have fired him independently of his protected activity. Neither the Secretary nor AirTran dispute that this is what § 42121 requires; instead, they argue petitioner misreads the pertinent Orders. They urge that in accepting AirTran's non-retaliatory explanation for firing petitioner, the ALJ and Board found that petitioner had not proved that his protected activity was a "contributing factor" to

12

the decision to fire him.  We agree.  A fair reading of the ALJ's and Board's orders reveals that they believed petitioner had not shown that his protected activity contributed to his termination.[7]  Accordingly, AirTran was under no obligation to prove that it would have taken the same personnel action regardless of petitioner's protected activities.

Petitioner's substantial evidence challenge fares no better.  He urges that the reason the Board believed he was fired – the failed settlement negotiations and petitioner's demands therein – was pretext for retaliation.  In this regard, the ALJ found, and the Board affirmed, that AirTran fired petitioner because his demands for a severance package while on leave were unreasonable and excessive, and the unreasonable demands created an acrimonious relationship between petitioner and AirTran.  Substantial evidence in the record supports this conclusion.  The terms of petitioner's various demands for severance are undisputed, and Blinde testified that those demands were well above the standard industry package for an employee with petitioner's short tenure at AirTran.  It is also apparent from the record that petitioner's demands did not endear him to Blinde or AirTran and that the parties' relationship had deteriorated.  There is sufficient record evidence that a reasonable person would accept the conclusion that petitioner's settlement

_____

[7] Petitioner has abandoned any argument that his earlier suspension was retaliatory.

13

demands were the reason he was fired.

Petitioner points to several facts which, he argues, prove that the settlement-demands justification is pretext. First, he argues that the long delay between his last settlement demand (in November 2002) and his termination (in April 2003) suggests that this justification is pretextual. While the record might permit such an inference, it does not compel a factfinder to draw it. Next, petitioner argues that his settlement demands were reasonable, presumably to have us infer that such demands were not the actual reason AirTran fired him.[8] There is substantial evidence to the contrary, however; Blinde testified that petitioner's offers substantially exceeded standard industry practice. Petitioner further argues that AirTran's termination letter states that petitioner was fired for encouraging O'Sullivan to falsify a document – a reason the ALJ found "deficient"[9] – not for making unreasonable settlement demands. He would have us infer from this that the settlement demands were a pretext for retaliatory firing. But simply because

[8] To the degree petitioner argues he should not have been fired for making settlement demands, rather than offering to return to work unconditionally, we note that such demands are not protected activity under 49 U.S.C. § 42121(a).

[9] More precisely, the ALJ credited petitioner's testimony that he did not order any falsification over O'Sullivan's out-of-court statement to the contrary. The ALJ did not find, however, that AirTran disbelieved O'Sullivan, merely that AirTran responded unreasonably to O'Sullivan's accusations. What AirTran believed about the alleged falsification order, not whether the falsification request was actually made, is the relevant consideration in a pretext analysis.

14

the factfinder disbelieved one of AirTran's proffered legitimate reasons for its actions does not require her to disbelieve another, nor to infer a retaliatory motive by AirTran. Cf. Wilson v. B/E Aerospace Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (under Title VII, factfinder's rejection of legitimate explanation by employer permits, but does not compel, a finding of unlawful discrimination). Finally, petitioner notes that he offered to return to work in the midst of the settlement negotiations, on August 16, 2002, an offer he describes as unconditional. Again, he would have us infer from this that his conduct during the settlement negotiations was eminently reasonable, and therefore could not be the cause of his firing. Yet the record demonstrates that Blinde viewed the August 16 offer as conditional, in part because petitioner stated that he would not sign any waivers or releases. Whether or not petitioner's demands or offers were reasonable or unconditional is beside the point; if Blinde believed they were unreasonable and fired petitioner for that reason alone, then AirTran did not retaliate against petitioner for his protected activity. Substantial evidence in the record supports precisely this version of events.

In short, the evidence petitioner cites to prove that the settlement-demands justification is pretextual is unpersuasive and unavailing. The record might have permitted the ALJ and the Board to have made a finding that protected activity

15

contributed to petitioner's firing, but substantial evidence supports the opposite

conclusion.  The petition for review is

**DENIED.**