In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1009

HEATHER ADDIS,

*Petitioner*,

*v.*

DEPARTMENT OF LABOR,

*Respondent,*

and

EXELON GENERATION COMPANY, LLC,

*Intervening Respondent.*

Petition for Review of an Order of the
Department of Labor.
No. 05-118

ARGUED NOVEMBER 4, 2008—DECIDED JULY 30, 2009

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Heather Addis resigned from her job as Operations Supervisor at the Dresden Nuclear Power Station (operated by Exelon) after an argument with her supervisor over the company's requirement that

Addis make regular entries in the files of the employees that she supervised. Her supervisor felt her file entries were not timely and not sufficiently critical; Addis thought the requirement was pointless at best, and at worst detrimental to her ability to focus on plant security.

After her resignation, but during her two weeks' notice, she filed an internal complaint with Exelon's Employee Concerns Program (ECP)[1] that the disputed reporting requirements (and plant management's insistence on them) threatened the plant's safety. Then, before the date that her resignation was to become effective, Addis had a change of heart and sought to remain at her job; she conveyed her desire to stay in a letter to Dresden's operations director.

Between Addis's attempt to rescind the resignation and the end of her notice period, Exelon management held two meetings regarding Addis. The first, ostensibly held to discuss the ECP concerns, involved a human resources employee, an ECP staffer, and Exelon's general counsel, among others. The second meeting included both human resources and the general counsel, but also the top management of the Dresden plant. The purpose of this conference call was a discussion of whether to allow Addis to withdraw her resignation, but her ECP report was discussed in this meeting as well. The ultimate outcome of this meeting was management's decision to accept

---

[1] Because this is a review of an administrative agency decision, readers are forewarned that they will be wrestling with multiple acronyms.

her resignation in light of her refusal to comply with the record keeping requirement. She was notified at the end of her two weeks' notice that she could not continue at Dresden.

## I.  Procedural History

Pursuant to the Energy Reorganization Act (ERA), 42 U.S.C. § 5851(b), Addis filed a complaint with the Occupational Health and Safety Administration (OSHA) on April 5, 2004, alleging that Exelon did not allow her to rescind her resignation because of the safety complaints she made to ECP in violation of the statute. *Id.* § 5851(a). OSHA's Area Director conducted an investigation and found that Addis had not sustained her burden of proving that she was retaliated against. Addis then requested a hearing in front of an Administrative Law Judge (ALJ), who dismissed the case after the hearing, finding likewise that Addis failed to sustain the burden of proving that her protected activity was a contributing factor in her termination. Addis appealed to the Department of Labor's Administrative Review Board (ARB), who accepted the ALJ's conclusion and dismissed the complaint. She petitions this court for review of the Labor Department's dismissal. *Id.* § 5851(c).

One appellate assertion will be cast to the side before we begin. Exelon argues that *res judicata* bars us from hearing Addis's petition for review, because an Illinois state court has already found against her on a state retaliatory discharge claim based on her termination from Exelon. What Exelon ignores is that she was unable to

bring her ERA claim (which requires administrative adjudication) before the Illinois state court and unable to bring her Illinois claim before the Department of Labor. This precludes the application of *res judicata*. *See Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 & n.4 (7th Cir. 2008).

## II.  Standard of Review

The ERA protects an employee from being discriminated against for filing a complaint about plant safety. Discrimination is defined as an "unfavorable personnel action," 42 U.S.C. § 5851(b)(3), in retaliation for the employee's complaints about nuclear safety (complaints protected by 42 U.S.C. § 5851(a)(1)(A)-(F)). If an employee believes that she has been retaliated against, she may complain to the Department of Labor, and specifically OSHA. After an investigation, the Secretary of Labor (acting through OSHA) may find a violation "if the complainant has demonstrated that any [protected] behavior . . . was a contributing factor in the unfavorable personnel action" unless the "employer demonstrates by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of such behavior." *Id.* § 5851(b)(3)(C)-(D). Under the ERA, OSHA gets the first crack at investigating an employee complaint. The employee may then challenge OSHA's determination before an ALJ and seek review of the ALJ's decision in front of the ARB and then review in a federal court of appeals.

Our review of an ARB decision is conducted according to the Administrative Procedures Act. *Id.* § 5851(c)(1) (refer-

encing 5 U.S.C. §§ 701-06). We can only set aside the Board's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or "unsupported by substantial evidence." 5 U.S.C. § 706(2); *see Kahn v. U.S. Sec'y of Labor*, 64 F.3d 271, 276 (7th Cir. 1995). Substantial evidence is that which is "more than a mere scintilla" but it "may be less than a preponderance of the evidence . . . and a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable." *Kahn*, 64 F.3d at 276 (citations omitted).

The task for the Department of Labor in Addis's case was to determine whether Exelon's refusal to let her return to work was an "unfavorable personnel action"and if so, whether the protected action was a contributing factor to the refusal. In the Department's final decision (the ARB decision), the ARB punted on the unfavorable action issue (although the ALJ had found that Addis did not suffer an unfavorable personnel action) and affirmed the ALJ's decision on the ground that Addis failed to prove that her complaint was a contributing factor to the termination. The ARB adopted the ALJ's findings in their entirety on the contributing factor issue and we will therefore refer to the ALJ's decision throughout our discussion of this issue. Both the "unfavorable personnel action" and "contributing factor" arguments were raised on appeal, but the ARB rested its decision on the contributing factor issue which determines the outcome of the case.

### III. Analysis

The burden was on the plaintiff to prove, by a preponderance of the evidence, that her complaint was a contributing factor to Exelon's decision not to take her back. Congress intended that ERA's contributing factor standard provide complainants a lower hurdle to clear than the bar set by other employment statutes. *See Williams v. Admin. Review Bd.*, 376 F.3d 471, 476 (5th Cir. 2004) ("In 1992, Congress inserted into the ERA an independent burden-shifting framework to be used in determining employer liability . . . ."); *Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1572 (11th Cir. 1997) ("Section 5851 is clear and supplies its own free-standing evidentiary framework."). In particular, the ERA framework is intended to replace the traditional *McDonnell Douglas* formulation of retaliation. *See Stone & Webster Eng'g Corp.*, 115 F.3d at 1572 ("For employers, this is a tough standard, and not by accident. Congress appears to have intended that companies in the nuclear industry face a difficult time defending themselves." (citing H. Rep. No. 102-474(VIII), at 79 (1992))); *Trimmer v. U.S. Dep't of Labor*, 174 F.3d 1098, 1101 (10th Cir. 1999) (rejecting *McDonnell Douglas* burden-shifting framework for ERA claims); *see also Frobose v. Am. Sav. & Loan Ass'n*, 152 F.3d 602, 612 (7th Cir. 1998). Once the employee clears this hurdle, the burden is on the employer to prove by clear and convincing evidence that it would have taken the same personnel action absent the employee's complaint. 42 U.S.C. § 5851(b)(3)(D).

We have acknowledged that a "contributing factor" is something less than a substantial or motivating one.

*Frobose*, 152 F.3d at 612. Indeed, Congress's statements on the Whistleblower Protection Act (where the term first appeared) defined the term as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993) (quoting 135 Cong. Rec. 5033 (1989) (Explanatory Statement on S. 20)). The "contributing factor" phrase "is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant', 'motivating', 'substantial', or 'predominant' factor in a personnel action in order to overturn that action." *Id.*

We therefore accept the petitioner's contention that she can shift the burden to Exelon with a lesser showing than plaintiffs must make in the traditional *McDonnell Douglas* employment action. We note, though, that she was required to prove the contributing factor issue by a preponderance of the evidence. *Dysert v. U.S. Sec'y of Labor*, 105 F.3d 607, 610 (11th Cir. 1997). The ALJ found that she did not prove any retaliatory intent on Exelon's part. The ALJ instead found that Exelon refused Addis's attempt to rescind her resignation because the company was unhappy with her substandard performance. It was her performance record, of course, that led to the fateful meeting with her supervisor that culminated in her resignation.

To argue that she met her burden of proof, Addis points to the evidence she offered before the ALJ, which included a statement that Danny Bost, the plant manager, made in the meeting Exelon called to determine Addis's

future that he was "not sure" that Addis would be discharged absent her ECP complaint. The ALJ noted that this was the "closest indication of any retaliatory animus on the part of Respondent's management." Other evidence that Addis marshaled to meet her burden included the fact that the processing of Addis's ECP complaints deviated from Exelon's standard procedure (in particular, Exelon did not keep whatever promises of confidentiality it had made in connection with the submission of an ECP complaint), that Exelon's upper management failed to meet with Addis's immediate supervisor before her termination, that Exelon offered shifting rationales for her termination during depositions, and that Exelon management's testimony was impeached at the ALJ hearing. Addis also cited the short time frame between her complaint and the end of her employment as evidence that the former contributed to the latter. If we were reviewing a grant of summary judgment in Exelon's favor, we would be faced with a situation where there are numerous contested facts that are sufficiently important to warrant consideration by a trier of fact. But Addis has already had the benefit of a fact-finder (and one round of review), and our task is only to ensure that substantial evidence supports the decision below. *Kahn*, 64 F.3d at 276.

The ALJ determined that the evidence Addis presented was outweighed by the entire record which, in particular, detailed Addis's continued difficulties with the plant's working files requirement. The ALJ dismissed the plant manager's statement that he was "not sure" she would be terminated absent her complaint as insufficiently proba-

tive to outweigh the other record evidence. Similarly, the ALJ relied on Addis's employment history to rebut any inference based on the proximity of her termination to the date she filed the complaint. The ALJ also resolved credibility determinations in favor of Exelon management, finding that they were focused on safety, receptive to complaints, and exhibited no retaliatory animus toward Addis.

Our reading of the record finds substantial support for the ALJ's position. Both parties during the hearing and on appeal refused to meaningfully grapple with the import of Addis's resignation. Addis asks us to treat this as a straightforward termination case and to disregard the fact that she resigned. Exelon asks us to look at this case as if the company took no action but simply allowed Addis to carry out her wishes. There are significant flaws with both positions, and the success of the ALJ's opinion lies in its ability to capture the sensible middle ground of reality that lies between both parties' contentions.

Two things changed between the moment Addis met with her supervisor and the moment her employment ended twelve days later. One of those was that Addis issued a safety complaint through Exelon's ECP process. This was protected conduct and as such if this contributed to Addis's firing, she is entitled to relief under the ERA. *See Am. Nuclear Res., Inc. v. U.S. Dep't of Labor*, 134 F.3d 1292, 1295 (6th Cir. 1998). The other thing that changed was that Addis got angry and submitted a letter of resignation. Neither event should be viewed independently from the other.

Thus, the temporal proximity Addis cites to support a finding of retaliation is mitigated by the fact that the time frame was created by Addis's own resignation over a disagreement with her supervisor; this disagreement provided both the impetus for the termination of her employment and the impetus for her safety complaint. Similarly, both Exelon's divergence from its normal procedures for handling safety complaints and the discussion of Addis's complaint during plant management's meeting to determine her status can easily be attributed to the unique situation her resignation and subsequent complaint presented.

The resignation also, as the ALJ noted, differentiated Addis from the other supervisors at the plant who had exhibited similar deficiencies in their working files. Evidence presented to the ALJ showed that Addis was far from the only employee to resist the working file requirement. But, none of the other supervisors resigned and sought to return to work. This is an important distinction and the one that lies at the heart of the ALJ's ultimate decision. For there to be substantial evidence supporting his decision, the ALJ had to determine and explain why management's attitude toward Addis was different on September 28, when her supervisor met with her and exhorted her to improve her performance, and on October 10 when she was told that her employment was at an end. The ALJ was entitled on the record before him to find that while management was continually frustrated by Addis's performance, her angry resignation was the straw that broke the camel's back,

prompting the company to part ways with her. The petition for review is, therefore, DENIED.