20-3207-cv
*Grullon v. Delta Air Lines, Inc.*

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand twenty-one.

PRESENT:  JOSÉ A. CABRANES,
          RAYMOND J. LOHIER, JR.
          BETH ROBINSON,
                    *Circuit Judges.*

---

NERYS GRULLON,

    *Plaintiff-Appellant,*         20-3207-cv

    v.

DELTA AIR LINES, INC.,

    *Defendant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**    James R. Brauchle, Motley Rice LLC, Mount Pleasant, SC.

**FOR DEFENDANT-APPELLEE:**    Louis R. Martinez, Michael Maragoudakis, Martinez & Ritorto, P.C., New York, NY.

Appeal from an order of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED.**

Plaintiff Nerys Grullon ("Grullon") sued Defendant Delta Air Lines, Inc. ("Delta") based on an August 22, 2016 incident in which, following an altercation with a flight attendant, Grullon was removed from a Delta flight from the Dominican Republic to New York. Grullon was taken to a security holding room in the Punta Cana International Airport where she and a Delta employee, Victor Rodriguez ("Rodriguez"), signed a mutual release of claims (the "Release") drawn up by a public prosecutor of the Dominican Republic. Pursuant to the Release, Grullon, Rodriguez, and Delta agreed to "renounce filing any CIVIL or CRIMINAL action" against one another. Joint App'x 784. Ten months later, Grullon filed a complaint against Delta in the District Court claiming that she had signed the Release under duress, and alleging false arrest, defamation, negligence, and intentional infliction of emotional distress. Applying New York law, the District Court concluded that the Release had been signed under duress and was therefore voidable, but that Grullon's failure to timely repudiate the Release barred her suit. The District Court therefore granted Delta's motion for summary judgment under Federal Rule of Civil Procedure 56. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## DISCUSSION

"We review *de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all inferences and resolving all ambiguities in favor of [that] party." *Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 78 (2d Cir. 2020) (internal quotation marks omitted). We affirm a grant of summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

I.

Grullon argues, as she did below, that the Release is a contract based upon a promise to forbear prosecution of a crime, and it is therefore void as a matter of public policy under New York law. *See Union Exch. Nat.'l Bank of N.Y. v. Joseph*, 231 N.Y. 250, 253 (1921) ("There is to be no traffic in the privilege of invoking the public justice of the state."). *See generally Reddy v. Mihos*, 160 A.D.3d 510, 513 n.2 (1st Dep't 2018).

In evaluating the enforceability of the Release, we apply New York common law. *See Colon de Mejias v. Lamont*, 963 F.3d 196, 203 (2d Cir. 2020). As New York courts have recognized, "the principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests." *Berger v. Dynamic Imps., Inc.*, 274 N.Y.S.2d 537, 541 (N.Y. Civ. Ct. 1966) (quoting *Twin City Pipe Line Co. v. Harding*

2

*Glass Co.*, 283 U.S. 353, 356-57 (1931)) (alteration omitted). "For a contract to be void as against public policy, it should . . . be quite clearly repugnant to the public conscience." *Kloberg v. Teller*, 171 N.Y.S. 947, 948 (N.Y. Sup. Ct. 1918).

Generally, it is true that contracts predicated on an agreement to refrain from engaging with the criminal justice system are void as against public policy under New York common law. *See Union Exch.*, 231 N.Y. at 253-54. However, a combination of factors in this case mitigates the concerns underlying that general rule. First, the Release does not involve concealing information from law enforcement or suppressing evidence of a crime. *See Branzburg v. Hayes*, 408 U.S. 665, 696-97 (1972) ("[I]t is obvious that agreements to *conceal information* relevant to commission of crime have very little to recommend them from the standpoint of public policy" and "*concealment of crime* and agreements to do so are not looked upon with favor" (emphases added)); *cf. Ventura v. Cincinnati Enquirer*, 396 F.3d 784, 791-92 (6th Cir. 2005) (denying enforcement of agreement to withhold evidence of crime). The parties both had an opportunity to present their allegations to the prosecutor. Second, the Release does not stifle the prosecutor's ability to bring charges against either party in this case. *See People v. Eboli*, 34 N.Y.2d 281, 289-90 (1974). The prosecutor in the Dominican Republic retains the discretion to pursue criminal charges against either party, and that discretion is unaffected by the parties' agreement. Given that the prosecutor drafted the Release, it is clear that, in the face of a mutual release of claims by the parties, the prosecutor has no interest in filing charges against either party.[1] Finally, Delta provided separate consideration, apart from the promise not to pursue criminal action, for Grullon's release of civil claims against Delta—that is, Delta's release of civil claims against Grullon.

In sum, based on the facts in this case, viewed in the light most favorable to Grullon, we conclude that the Release is not void as a matter of public policy.

II.

We move, then, to consideration of whether the Release was voidable. "Under New York law, a contract or release, the execution of which is induced by duress, is voidable." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotation marks and alterations omitted). Construing the facts in favor of Grullon, as we must, we conclude that the release was executed under duress. Being escorted by airport security officials to their offices in the Punta Cana International Airport and told that Rodriguez intended to press charges against her might have created the "effect of precluding the exercise of free will" required to establish duress. *In re*

---

[1] In the unlikely event that the prosecutor did choose to conduct further investigation of the incident or even to file charges against either party, for the public policy reasons noted above, we do not believe the Release could properly be construed to prevent either party from cooperating with the prosecutor.

*Guttenplan*, 222 A.D.2d 255, 257 (1st Dep't 1995); *see also id.* (explaining that "a threat of criminal prosecution" can cause duress). The Release was therefore voidable.

That said, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (internal quotation marks omitted). A repudiation must be "clear and unequivocal." *Walton Mgmt., LLC v. Walton Apartments, LLC*, 298 A.D.2d 277, 278 (1st Dep't 2002).

The District Court concluded that Grullon repudiated the Release ten months after she signed it by filing her complaint, and that her repudiation was therefore untimely. Special App'x 3; *see VKK Corp.*, 244 F.3d at 122 ("Delays as short as six months have been held to constitute forfeiture of the claim."); *see also Oquendo v. CCC Terek*, 111 F.Supp.3d 389, 410 (S.D.N.Y. 2015) (construing New York law and holding that a duress claim was forfeited by a delay of eight months).

On appeal, Grullon advances two arguments. First, she argues, as she did below, that her duress was ongoing, and that she therefore did not need to repudiate the Release. *See In re Guttenplan*, 222 A.D.2d at 257; *Sosnoff v. Carter*, 165 A.D.2d 486, 492 (1st Dep't 1991) ("[W]here during the period of acquiescence . . . the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased."). We reject this argument. Once Grullon returned to the United States, her duress effectively ended. We need not rely, as the District Court did, on Grullon's voluntary return trip to the Dominican Republic, which she argues based on the record may have occurred after she filed her complaint repudiating the Release. At a minimum, the record shows that within three months of the incident, Grullon had retained counsel and was contemplating litigation, which belies the notion that a fear of prosecution still "preclud[ed] the exercise of [her] free will." *In re Guttenplan*, 222 A.D.2d at 257.

Second, Grullon argues the District Court was wrong to date her repudiation to the filing of her complaint, and that instead a preservation letter she sent to Delta on November 14, 2016, approximately three months after the incident, constituted repudiation of the Release and was timely. This argument was not raised before the District Court, and we need not entertain it. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal." (internal quotation marks omitted)). Were we to do so, we would conclude that the preservation letter was insufficient to repudiate the Release. The letter does not claim the Release was signed under duress, indicate that Grullon will in fact breach the Release, or indeed even *mention* the Release. Joint App'x 873-77. It therefore cannot be said to "clear[ly] and unequivocal[ly]" repudiate it. *Walton Mgmt.*, 298 A.D.2d at 278.

In sum, Grullon's purported preservation letter did not repudiate the Release, and her repudiation by her complaint, ten months after the August 22 incident, was untimely.

4

## CONCLUSION

We have reviewed all of the arguments raised by Grullon on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the July 24, 2020 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court