22-918-cv
Global Energy Trading Pte Ltd. v. ING Bank

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of April, two thousand twenty-three.

PRESENT:
> **RICHARD C. WESLEY,**
> **MICHAEL H. PARK,**
> **BETH ROBINSON,**
> *Circuit Judges.*

_____

**Global Energy Trading Pte Ltd.,**

> *Defendant-Cross-Defendant-*
> *Cross-Claimant-Appellant,*

> **v.**                                                    **22-918**

**Fujian Ocean Shipping Co. Ltd., individually and on behalf of M/V ZHENG RUN (IMO No. 9593816) and M/V ZHENG RONG (IMO No. 9593828),**

> *Plaintiff-Counter-Defendant,*

> **v.**

**ING Bank N.V.,**

> *Defendant-Cross-Claimant-Counter-*
> *Claimant-Cross-Defendant-Appellee,*

**O. W. Bunker Far East (S) Pte. Ltd., Equatorial Marine Fuel Management Services Pte Ltd., Sinanju Marine Services Pte Ltd., Global Marine Transportation Pte Ltd.,**

*Defendant-Cross-Defendant.*

---

**FOR APPELLANT:**     THOMAS H. BELKNAP, JR., Blank Rome LLP, New York, NY.

**FOR APPELLEE:**     BRUCE G. PAULSEN, (Brian P. Maloney *on the brief*), Seward & Kissel LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

O.W. Bunker Far East Pte Ltd. ("OWFE") contracted with Fujian Ocean Shipping Co. Ltd. ("Fujian") to supply maritime fuel (called "bunkers") to one of Fujian's vessels. OWFE then subcontracted with Global Energy Trading Pte Ltd. ("GET") to fill the order. GET's contract with OWFE contained a Retention of Title clause, which stated that "[n]otwithstanding delivery and the passing of risk in the [bunkers] having been made, . . . property in the [bunkers] shall not pass from [GET] to [OWFE] until" GET "received . . . payment." App'x at A-828. The clause also stated that, until title passed, OWFE "shall upon the request of [GET] return" the bunkers. *Id.* The OWFE-GET contract did not, however, require payment upon delivery; OWFE had 30 days upon receipt of GET's invoice to pay for the bunkers. Accordingly, the parties agree they were aware that, prior to payment, the vessel might consume the bunkers delivered by GET during that payment window.

2

GET delivered the bunkers to Fujian's vessel on November 4 and 5, 2014. On November 7, OWFE's parent company filed for bankruptcy. On November 10—before OWFE paid GET— GET sent a letter to Fujian and OWFE invoking the Retention of Title clause and claiming that GET retained title to the bunkers, Fujian was not entitled to use the bunkers, and any consumption by Fujian would be deemed conversion. Fujian did not return the bunkers or pay GET or OWFE.

OWFE and GET sued Fujian in separate actions, and Fujian initiated this interpleader action. ING Bank N.V. ("ING"), OWFE's security agent, asserted breach of contract claims against Fujian and *in rem* maritime lien claims against the interpleader fund. GET asserted claims against the interpleader fund for conversion of the bunkers based on Fujian's consumption of the bunkers after GET invoked the retention of title provision and requested return of the bunkers.[1] The district court granted summary judgment in favor of ING on ING's claims, denied summary judgment on GET's conversion claim, and entered judgment in favor of ING and against GET. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's grant of summary judgment." *Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 78 (2d Cir. 2020) (cleaned up). "When each side has moved for summary judgment," we "assess each motion on its own merits and [] view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

---

[1] GET also asserted an unjust enrichment claim against Fujian but does not challenge on appeal the district court's dismissal of it.

## I. GET's Conversion Claim

The district court held that, even assuming GET can bring a conversion claim against Fujian based on GET's November 10 letter to Fujian, that claim is barred by the doctrine of equitable estoppel. We agree.

On appeal, the parties do not dispute that Singapore law governs GET's conversion claim. Under Singapore law, the doctrine of equitable estoppel has three elements: (1) "a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made;" (2) "an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made;" and (3) "detriment to such person as a consequence of the act or omission." App'x at A-572 (citing *Tong Seak Kan v. Jaya Sudhir a/l Jayaram* [2016] 5 SLR 887 at [37]). Here, all three elements are met.

First, GET induced a course of conduct because "GET delivered the bunkers to Fujian so that they could be consumed, even before they were paid for." Special App'x at SPA-16. As the Singapore High Court concluded in *Precious Shipping Co Ltd v. OW Bunker Far East (Singapore) Pte Ltd.*, [2015] 4 SLR 1229, a physical supplier who delivers bunkers without requiring payment "must plainly have intended (or at least must be taken to have intended) for the bunkers to be consumed." App'x at A-951. Indeed, GET admits that it was aware that Fujian might consume

4

the bunkers before paying for them. GET's delivery constitutes conduct amounting to a representation intended to induce the use of the bunkers.[2]

Second, "Fujian acted and failed to take other actions in obvious reliance on the implied representation that it could consume the fuel prior to payment," specifically by "commingl[ing] the fuel with existing fuel that was already on board the vessel." Special App'x at SPA-17. In addition, Fujian failed to make "arrangements for additional refueling," as it would have needed to do "[i]f Fujian was not relying on GET's implied representation that it could consume the delivered fuel prior to payment." *Id.* Such acts are evidence of Fujian's reliance, even assuming Fujian had not consumed all the fuel GET had delivered at the time of the November 10 letter.

Third, any "off-loading of the bunkers and replacement with fuel from another source" would have caused detriment to Fujian, namely "inevitable delays and costs." *Id.* at SPA-18; *see also* App'x at A-791. And "[p]aying GET directly would have had the obvious detriment of exposing Fujian to double liability, as it would still have been on the hook to pay OWFE." Special App'x at SPA-18. GET argues that Fujian did not suffer a detriment because Fujian was aware that OWFE "did not take title to the bunkers until it had paid for them, and they also knew that OWFE was contracting with a third party who would have its own terms and conditions." Appellant's Br. at 37. But even if Fujian was aware that OWFE did not have title to the bunkers until it had received payment for them, *Precious Shipping* makes clear that Fujian was also legally

---

[2] GET claims that delivery could not be an inducement given that, under its contract with OWFE, GET had the right to revoke its permission to use the bunkers without payment and in fact tried to revoke that permission by sending the November 10 letter. But GET's revocation came after Fujian had already been induced into a course of conduct, namely commingling GET's bunkers with its existing fuel and beginning to consume the commingled fuel.

entitled to rely on delivery by commingling and consuming the bunkers before payment. *See* App'x at A-950-51. The Retention of Title clause thus could not have put Fujian on notice to avoid any detrimental reliance.

Equitable estoppel is a complete defense against GET's conversion claim. *See Tong Seak Kan* [2016] 5 SLR 887 at [39]. GET's conversion claim thus fails as a matter of law.

## II. ING's Breach of Contract and Maritime Lien Claims

GET also claims that the district erred in granting ING summary judgment on its breach of contract and maritime lien claims.[3] But GET fails to identify any error.

First, summary judgment in favor of ING on its breach of contract claim was proper. OWFE contracted with Fujian, OWFE performed under that contract, and Fujian failed to pay OWFE the contractual price. Fujian's failure to pay OWFE thus constitutes a breach of contract. GET argues—as it did below—that ING's breach of contract claim nevertheless fails because, based on the Retention of Title clause in OWFE and GET's contract, "OWFE never had title to the bunkers." Appellant's Br. at 44. But as the district court found, "GET cites no authority to explain why the Retention of Title clause in its own contract with OWFE would eliminate OWFE's separate contract claim against Fujian." Special App'x at SPA-10.

Second, summary judgment in favor of ING on ING's maritime lien claims was also proper. This Court has already held that a "contractor is entitled to assert a maritime lien under [the Commercial Instrument and Maritime Lien Act] when it contracts with an entity specified in

---

[3] The district court found that ING could bring these claims in place of OWFE because "ING has shown that it was validly assigned OWFE's rights under English law." Special App'x at SPA-9. GET does not dispute this finding on appeal.

the statute for the delivery of necessaries and those necessaries are delivered pursuant to that arrangement, even if by a subcontractor." *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 515 (2d Cir. 2018). This standard is met when, as here, "a bunker contractor" such as OWFE "contract[s] with a statutorily-authorized person for the delivery of bunkers" and "the bunkers [are] delivered pursuant to that contractual arrangement." *Id.* at 520.

Accordingly, we find no error in the district court's entry of judgment in favor of ING and against GET. We have considered all of GET's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
