**FOLGER ADAM COMPANY,**
**Plaintiff–Appellant,**

v.

**PMI INDUSTRIES, INC., Control Systems Corporation, WEDGE Group, Inc., and Salomon Brothers Inc., Defendants–Appellees.**

**No. 1083, Docket 90–7798.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1991.

Decided July 15, 1991.

Steven B. Feirson, New York City (George G. O'Brien, Judy L. Popper, Marshall J. Walthew, Michael F.R. Harris, Robert Cohen, Howard S. Schrader, Dechert Price & Rhoads, of counsel), for plaintiff-appellant.

Melvyn L. Cantor, New York City (Mary Elizabeth McGarry, John R. Menz, Daniel J. Sullivan, Nicholas Even, Simpson Thacher & Bartlett, of counsel), for defendants-appellees PMI Industries, Inc., Control Systems Corp. and WEDGE Group, Inc.

Robert B. Mazur, New York City (Warren R. Stern, David Gruenstein, George T. Conway III, Wachtell, Lipton, Rosen & Katz, of counsel), for defendant-appellee Salomon Bros. Inc.

Before OAKES, Chief Judge, and CARDAMONE and MAHONEY, Circuit Judges.

OAKES, Chief Judge:

Folger Adam Company ("Folger Adam") appeals from a judgment following a jury trial of the United States District Court for the Southern District of New York, Whitman Knapp, Judge, dismissing its claims under federal and state securities laws against PMI Industries, Inc., WEDGE Group, Inc., Control Systems Corporation (collectively "PMI") and Salomon Brothers Inc. ("Salomon"). Because we find that

the district court erroneously instructed the jury regarding the meaning of the materiality requirement of the federal securities laws, and that a properly instructed jury could find that appellees committed omissions or misstatements of material fact in violation of those laws, we reverse and remand for a new trial.

## BACKGROUND

In early 1986, PMI, a diversified holding company, began negotiating to sell Stewart Decatur Security Systems and the William Bayley Company (collectively "Stewart/Bayley"), two of its subsidiaries that manufacture detention and security equipment, to Folger Adam. Toward this end, PMI retained Salomon, an investment banking firm, to evaluate Stewart/Bayley's net worth and to prepare an offering memorandum on the two companies. In April 1986, Salomon requested various financial documents from Stewart/Bayley, including any internal earnings projections that had been prepared on the two companies. In response, Stewart/Bayley's management sent financial forecasts to Salomon that predicted that Stewart/Bayley's earnings would fall from $4.8 million in 1986 to $2.9 million in 1987, and would stay approximately at that level through 1990 (the "April projections").

After PMI learned of the pessimistic April projections, it asked Salomon not to include them in the offering memorandum on Stewart/Bayley. According to Folger Adam, PMI was afraid that if the projections were included in the offering memorandum, the sale price for the two companies would substantially decrease. PMI vigorously refutes this interpretation, and argues that it sought to exclude the April projections from the offering memorandum because the projections were "conservative" estimates of Stewart/Bayley's earnings potential that did not accurately reflect the two companies' future prospects. The parties do agree, however, that, although the April projections were included in an early version of the offering memorandum, they were omitted from the final version, which instead stated that "management believes that net sales and net income for fiscal year 1986 should increase over 1985 levels and remain strong in the future."

After receiving the final offering memorandum, Folger Adam asserts that it contacted PMI and Salomon in order to obtain any earnings projections that had been performed on Stewart/Bayley, but was informed by both appellees that no such forecasts had ever been prepared. Folger Adam also contends that Salomon stated that, although no formal earnings projections had been performed, Stewart/Bayley's earnings were estimated to remain around $5 million a year for the foreseeable future. PMI and Salomon flatly reject these allegations.

In August 1986, Folger Adam signed a letter of intent to purchase Stewart/Bayley, and began to perform its own program of due diligence on the two companies. As part of this investigation, Folger Adam requested that PMI analyze Stewart/Bayley's 1987 earnings potential. This request was considered at an October 1, 1986 meeting of Stewart/Bayley's Board of Directors. According to Folger Adam, Stewart/Bayley's managers suggested at the meeting that 1987 earnings be projected at $2.4 million (the "October projections"), but PMI's president refused such an "unacceptable" figure, and instead insisted that Folger Adam be told that 1987 earnings would be between $3.8 and $4.2 million. PMI concedes that the $2.4 million figure was mentioned at the meeting, but argues that it was simply an arbitrary figure meant to initiate discussion, and that the entire board at the end of the meeting agreed that a more accurate projection was between $3 and $4 million.

Thereafter, PMI informed Folger Adam that the 1987 earnings were projected to be approximately $4 million. Folger Adam contends that upon receiving the information, it became concerned because the figure was significantly less than 1986 earnings. Folger Adam alleges that to quell this concern, PMI informed it that the $4 million figure was a product of management's conservatism, and that a more real-

istic projection for 1987 earnings would be approximately $5 million. PMI disagrees that it ever made any such statement.

In December 1986, after PMI gave Folger Adam written confirmation of the $4 million forecast, Folger Adam closed on its purchase of Stewart/Bayley for $28.5 million. Immediately thereafter, Folger Adam discovered that Stewart/Bayley's earnings were declining. In fact, the actual operating income for the two companies for 1987 was approximately $500,000, nearly one-eighth of the $4 million projection that PMI had provided to Folger Adam before the deal was consummated. Although appellees disclaim any responsibility for this precipitous decline in Stewart/Bayley's earnings, they do concede that Folger Adam did not learn of the pessimistic April 1986 projections until July 1987, approximately seven months after the sale had been consummated.

After Folger Adam discovered the April and October projections, it initiated this suit on the ground that appellees had offered and sold Stewart/Bayley by means of oral misrepresentations and a misleading offering memorandum, in violation of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.[1]

The central issue at trial was whether the April and October projections constituted *material* facts that had to be disclosed under the federal securities laws. After seven weeks of testimony, the district court instructed the jury on the law, including the law on materiality,[2] and directed them to answer several interrogatories, the first of which asked whether appellees had misstated or omitted any material facts in connection with the sale of Stewart/Bayley. Because the jury found that appellees had not made any material misstatements or omissions, the court instructed the jury to stop deliberating, and entered judgment in favor of appellees.

Folger Adam appeals the district court's judgment on the ground that the court misinstructed the jury regarding on the issue of materiality. Appellees respond that the materiality instruction was proper and that, in any event, their conduct was not actionable as a matter of law.

## DISCUSSION

 The Supreme Court has alternatively defined a material fact as that which a reasonable investor would view "as having significantly altered the 'total mix' of information made available" or that which there is a substantial likelihood that a reasonable investor "would consider ... important in

---

1. The complaint also alleged various state law claims, including breach of contract and fraudulent misrepresentation, that are not at issue on this appeal.

2. The full charge on materiality was as follows:
 In the context of this case, a fact is material when there is a substantial likelihood that, if a reasonable investor had learned of the falsity of the misstatement of fact or the existence of the omitted fact, that investor would have regarded the total mix of information available to have been significantly altered.
 By total mix of information, I mean all the information from any source available to such investor at the time it made a decision.
 I note that a number of the witnesses were asked whether they would have wanted to know certain information under certain circumstances. An answer to such a question is by no means determinative of whether or not materiality as I defined it has been established. That certain information would have satisfied the curiosity of any particular investor has nothing to do with the question of

materiality unless you find a substantial likelihood that the information supplied in satisfaction of such curiosity would have had, in the view of a reasonable investor, the effect of significantly altering the total mix of information available and thus would have caused it to alter its views as to the desirability of proceeding with the purchase.
 In other words, information is material when there is a substantial likelihood that a reasonable investor in Folger Adam's circumstances would have regarded the total mix of information available to it—all the information gleaned from the due diligence investigation, publicly available information about the companies and of the detention industry in which they operated—to have been significantly altered, had it discovered that management's views of the companies' prospects were inaccurate or had the lower figures been disclosed.
 Tr. 3592–94.

deciding how to vote." *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). No matter how stated, however, it is well-established that a material fact need not be outcome-determinative; that is, it need not be important enough that it "would have caused the reasonable investor to change his vote." *Id.* Rather, the information need only be important enough that it "would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.*

■ In this case, the district court's four-paragraph materiality charge did not adequately inform the jury of the proper meaning of materiality, and, in fact, may have affirmatively misled the jury on the correct standard. First, although the charge repeatedly stated that a material fact is one that would alter the total mix of available information, *see supra* note 2, it never mentioned, much less highlighted, the critical distinction between facts that are important enough to assume actual significance in a reasonable investor's deliberations, and facts that are so important that they would change an investor's decision whether to consummate the transaction.[3] In our view, it is doubtful that the jury, which is presumed to be unfamiliar with legal jargon and probably has little or no experience in the securities industry, would comprehend that a fact that would significantly alter the total mix of available information is simply a fact that would "have assumed actual significance in the deliberations of the reasonable shareholder." *TSC,* 426 U.S. at 449, 96 S.Ct. at 2132. Rather, we think that the jury would take the "total mix" formulation to mean that a material fact is one that would cause a reasonable investor to change her decision on whether to consummate a transaction. As a result, the jury may erroneously have believed that appellees' conduct could constitute an omission or misstatement of material fact only if a reasonable investor in Folger Adam's position would have cancelled the Stewart/Bayley transaction had it been aware of the April and October earnings projections.[4]

■ The possibility that the jury may have erroneously believed that an omission or misstatement of material fact must be outcome-determinative is compounded by the district court's statement that a material fact "would have caused [a reasonable investor] to alter its views as to the desirability of proceeding with the purchase." In our view, this phrase is susceptible to two different interpretations. On the one hand, if the jury construed the term "alter" to mean a slight variation rather than a complete change,[5] it would have properly understood the disputed phrase to mean that a material fact is one that would affect a reasonable investor's deliberations without necessarily changing her ultimate investment decision. However, if the jury con-

3. In this case, the subtle distinction between information that is outcome-determinative and that which is important, but not outcome-determinative, is critical. After all, a reasonable investor in Folger Adam's position may well have viewed the pessimistic April and October projections as important enough to assume actual significance in its investment deliberations—i.e., in determining how much it was willing to pay for Stuart/Bayley, or how it was going to structure the transaction—but not necessarily important enough, when viewed as part of the total mix of available information, to change its decision on whether to consummate the transaction. *See, e.g., SEC v. Nat'l Student Marketing Corp.,* 457 F.Supp. 682, 708–09 (D.D.C.1978) (noting that earnings projections are material if a reasonable investor would consider them "important and significant," even if the information would not change the investor's decision on whether to consummate the transaction).

4. We do not mean to suggest that the "total mix" formulation—which is at the core of the Supreme Court's understanding of materiality—is improper in a charge on materiality. Rather, we hold only that in a case such as this—where materiality is likely to turn on the distinction between information that would assume actual significance in a reasonable investor's deliberations and information that would be outcome-determinative—the "total mix" formulation must be explained in a manner that highlights that subtle distinction to the jury.

5. To "alter" means "to cause to become different in some particular characteristic ... without changing into something else." Webster's Third New International Dictionary at 63 (16th ed. 1971).

strued "alter" to mean a complete change rather than a slight variation—a likely possibility given the colloquial usage of the term— [6] it could have erroneously believed that a material fact must change a reasonable investor's decision on whether to consummate a transaction. Accordingly, because the jury may have been led to believe that a material fact must be outcome determinative, we find that the charge was erroneous. *See Paolillo v. Dresser Indus., Inc.,* 865 F.2d 37, 40 (2d Cir.), *modified on other grounds,* 884 F.2d 707 (2d Cir.1989) (finding a jury charge erroneous because it could not be said for certain that it did not cause the jury to apply the wrong legal standard); *Norfleet v. Isthmian Lines, Inc.,* 355 F.2d 359, 362–63 (2d Cir.1966) ("The appellate function of this court is to satisfy itself that instructions ... show *no tendency* to confuse or mislead the jury as to the principles of law which are applicable.") (emphasis added).[7]

Our conclusion that the charge in this case was erroneous is not affected by appellees' observation that we have employed similar language in the past to describe the materiality requirement. *See, e.g., Wilson v. Great Am. Indus., Inc.,* 855 F.2d 987, 992 (2d Cir.1988) (" '[M]aterial facts ... may affect the desire of investors to buy, sell, or hold the company's securities.' ") (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)); *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 166 (2d Cir.1980) (noting that a relevant question in determining whether information is material is whether it "would have been likely to affect the decision of potential buyers and sellers"); *Harkavy v. Apparel Indus., Inc.,* 571 F.2d 737, 741 (2d Cir.1978) (also quoting *Texas Gulf Sulphur Co.,* 401 F.2d

at 849). First, the operative term in these cases was "affect," which, unlike "alter," does not suggest that material information must change a reasonable investor's decision on whether to consummate a transaction. Second, because the materiality determination in *Wilson, Elkind,* and *Harkavy* did not turn on the subtle distinction between information that may affect a reasonable investor's deliberations and information that would dissuade that investor from consummating the transaction, we fail to perceive how these cases are instructive in a situation such as this, where that distinction may well be dispositive.

■ In spite of the error in the jury charge, appellees argue, there is no need for a new trial. Rather, appellees insist that they are entitled to a directed verdict because their actions, as a matter of law, did not constitute securities fraud. First, PMI and Salomon argue that because the April and October earnings projections were not complied with "substantial certainty," they were not material facts that needed to be disclosed in the course of the Stewart/Bayley transaction. Because Folger Adam's witnesses may be able to persuade a correctly instructed jury that the April and October projections were accurate statements of Stewart/Bayley's future that were intentionally concealed, however, we cannot find that appellees' conduct was immaterial as a matter of law. *See Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 164 n. 12 (2d Cir.1980) ("Liability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects."); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc) ("[M]aterial facts include ... information disclosing the earnings and distributions of a company.").[8]

**6.** A common synonym for "alter" is "change." American College Dictionary 37 (1970).

**7.** In this regard, we disagree with the district court's decision to deny Folger Adam's motion for judgment notwithstanding the verdict on the ground that the "mere fact that one might alter one's views as to the desirability of proceeding with a transaction, did not necessarily mean that such alteration would ultimately result in a

different course of action." As noted, the proper inquiry is not whether the jury *necessarily* misconceived the meaning of the materiality charge, but whether, given the ambiguity in the charge, the jury *might* have misunderstood the controlling standard of law.

**8.** In this regard, PMI's reliance on cases that have found certain internal earnings projections to be immaterial as a matter of law, *see, e.g.,*

Second, Salomon claims that because its only role in the transaction was to prepare the offering memorandum on Stewart/Bayley, it cannot be held legally responsible for any securities laws violations. We note, however, that Folger Adam's witnesses testified at trial that Salomon was more than an innocent player in the alleged deception concerning Stewart/Bailey's earnings projections. According to these witnesses, Salomon not only agreed to exclude the pessimistic April projections from the final offering memorandum, but also affirmatively misled Folger Adam by stating that Stewart/Bayley's future earnings would remain at approximately $5 million a year. Assuming that such statements were made, we cannot conclude that a reasonable investor in Folger Adam's position, knowing that Salomon had performed extensive due diligence on Stewart/Bayley and had prepared the offering memorandum on the two companies, would not have factored them into its deliberations on whether to purchase Stewart/Bayley.

In conclusion, although we are sympathetic to appellees' claim that Folger Adam is a sophisticated investor that conducted its own investigation before deciding to purchase Stewart/Bayley, we find that reasonable minds could differ as to whether a reasonable investor in Folger Adam's position would have considered appellees' omissions and alleged misstatements "significant, even as part of a larger 'mix' of factors to consider in making his investment decision." *Basic Inc. v. Levinson*, 485 U.S. 224, 234, 108 S.Ct. 978, 985, 99 L.Ed.2d 194 (1988) (quoting *TSC Indus., Inc.*, 426 U.S. at 448–49, 96 S.Ct. at 2131–32). As a result, we reverse the judgment of the district court and remand for a new trial in which the jury is clearly instructed that a fact can be material if it would have assumed actual significance in a reasonable investor's deliberations, even if it would

not have changed the investor's decision on whether to consummate the transaction.

*Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 516 (7th Cir.1989); *Panter v. Marshall Field & Co.,* 646 F.2d 271, 292–93 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981), is inapposite. In those cases, there

was no dispute that the earnings projections at issue were hastily-drawn, rough estimates that were generated for internal use only. In contrast, here there is substantial dispute as to the quality of the April and October projections.