20-4202(L)
*Murray v. UBS Sec., LLC*

# United States Court of Appeals
# For the Second Circuit

August Term 2021
Argued: April 1, 2022
Decided: February 10, 2025

Nos. 20-4202(L), 21-56(XAP)

Trevor Murray

*Plaintiff-Appellee-Cross-Appellant,*

*v.*

UBS Securities, LLC, UBS AG,

*Defendants-Appellants-Cross-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 14-cv-927, Failla, *Judge*.

Before:     PARK, MENASHI, and PÉREZ, *Circuit Judges*.

Trevor Murray briefly worked for Appellants UBS Securities, LLC and UBS AG ("UBS"). But he was terminated after he complained to a supervisor that other employees had violated Securities and Exchange Commission regulations. Murray then brought a claim for retaliation against a whistleblower under 18 U.S.C. § 1514A. That statute required Murray to show that his whistleblowing was a "contributing factor" in his termination. At trial, the district court instructed the jury that a "contributing factor" is one that "tend[s] to affect in any way" a decision. Murray won.

On appeal, we vacated and remanded because the district court's instruction did not require Murray to show that UBS acted with "retaliatory intent." But the Supreme Court reversed, holding that retaliatory intent or "animus" is not an element of Murray's claim.

Now, on remand from the Supreme Court, UBS maintains that the district court's instruction was wrong in two ways. First, the instruction allowed the jury to find that whistleblowing generally is the type of thing that "tends" to affect a termination, rather than something that actually affected Murray's termination. Second, the instruction allowed the jury to find that Murray's whistleblowing "affected" his termination "in any way"—even if whistleblowing did not affect his termination in a way that "contributed" to it by making it more likely.

We agree with UBS. The district court's instruction strayed from the text of § 1514A by expanding the definition of a contributing factor—and so the scope of UBS's liability—beyond what the statute

2

allows. A contributing factor is one that causes or helps cause a subsequent event. But it must *actually* cause or help cause the termination decision—it is not enough merely to influence the termination or generally to be the type of thing that tends to cause termination.

We thus **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

Judge Pérez dissents in a separate opinion.

————

THOMAS G. HUNGAR, Gibson, Dunn & Crutcher LLP, Washington, DC (Eugene Scalia, Andrew G.I. Kilberg, Gabrielle Levin, Gibson, Dunn & Crutcher LLP *on the brief*), *for Defendants-Appellants*.

ROBERT L. HERBST, Herbst Law PLLC, New York, NY (Robert B. Stulberg, Patrick J. Walsh, Stulberg & Walsh LLP; Scott A. Korenbaum, Scott A. Korenbaum, Esq.; Benjamin J. Ashmore, Sr., Herbst Law PLLC *on the brief*), *for Plaintiff-Appellee*.

————

PARK, *Circuit Judge*:

Trevor Murray briefly worked for Appellants UBS Securities, LLC and UBS AG ("UBS"). But he was terminated after he complained to a supervisor that other employees had violated Securities and Exchange Commission ("SEC") regulations. Murray then brought a claim for retaliation against a whistleblower under 18

3

U.S.C. § 1514A. That statute required Murray to show that his whistleblowing was a "contributing factor" in his termination. At trial, the district court told the jury that a "contributing factor" is one that "tend[s] to affect in any way" a decision. Murray won.

In this case's first appeal, we vacated and remanded because the district court's instruction did not require Murray to show that UBS acted with "retaliatory intent." But the Supreme Court reversed our decision, holding that retaliatory intent or "animus" is not an element of Murray's claim.

Now, UBS argues that the district court's instruction was still wrong twice over. First, it allowed the jury to find that whistleblowing generally is the type of thing that "tends" to affect a termination, rather than something that actually affected Murray's termination. Second, it allowed the jury to find that Murray's whistleblowing "affected" his termination "in any way"—even if his whistleblowing did not "contribute" to his termination by making it more likely.

We agree with UBS. The district court's instruction strayed from the text of § 1514A by expanding the definition of a contributing factor—and so the scope of UBS's liability—beyond what the statute allows. A contributing factor causes or helps cause a subsequent event. But it must *actually* cause or help cause the termination decision—it is not enough merely to influence the termination, or generally to be the type of thing that tends to cause termination.

We thus vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

4

# I. BACKGROUND

The facts and procedural history of this case are set out in *Murray v. UBS Securities, LLC*, 43 F.4th 254 (2d Cir. 2022). We assume familiarity with that opinion, which we summarize here only briefly.

## A.    Facts

Murray started working as a strategist in UBS's commercial mortgage-backed securities ("CMBS") business in 2011. He was "responsible for performing research and creating reports that were distributed to UBS's current and potential clients about CMBS products, services, and transactions." *Id.* at 256 (cleaned up). SEC regulations required him to produce his reports independently from other UBS employees who traded in CMBS products. *See* 17 C.F.R. § 242.501(a). In December 2011 and January 2012, Murray reported to a supervisor that two CMBS traders were violating those regulations by asking him to publish reports supporting their business strategies. *Murray*, 43 F.4th at 265. He was terminated about a month after his second report. *Id.* at 257.

Murray sued UBS, alleging that he was terminated in violation of the anti-retaliation provision of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A.

## B.    Procedural History

Murray's case went to trial, near the end of which the district court informed the parties of the legal instructions it intended to provide the jury. UBS raised several objections.

5

One of UBS's objections concerned the district court's characterization of the burdens of proof that a SOX plaintiff and defendant must satisfy to establish or dispute liability. SOX requires a plaintiff to show that his protected activity—here, reporting violations of SEC regulations—was a "contributing factor" in an adverse employment action taken against him. *See* 49 U.S.C. § 42121(b)(2)(B). If a plaintiff makes that showing, the burden then shifts to the defendant to show by clear and convincing evidence that it would have taken the adverse action anyway. *Id.*

UBS objected to the district court's definition of a "contributing factor" as one that "tended to affect in any way" Murray's termination, arguing that the definition was overbroad. The district court overruled UBS's objection and proceeded to instruct the jury. Murray won and was awarded $903,300. UBS moved for judgment as a matter of law, the district court denied that motion, and UBS appealed. *See Murray*, 43 F.4th at 258.

In UBS's initial appeal, we vacated and remanded for a new trial. *See id.* We held that SOX plaintiffs must show that a defendant acted with "retaliatory intent." *Id.* at 256. The district court's jury instruction did not reflect that requirement, so a new trial was necessary.

The Supreme Court reversed. *See Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024). It held that retaliatory intent, understood as "as 'prejudice' or 'animus,'" is not an element of a retaliation claim under SOX. *Id.* at 32; *see also id.* at 40 (Alito, J., concurring) ("[O]ur rejection of an 'animus' requirement does not read intent out of the statute.

6

Rather, as the Court confirms, a plaintiff must still show intent to discriminate.").  The Court declined to examine UBS's other arguments about the contributing factor instruction.  *Id.* at 37 n.2 (majority opinion).  Those arguments are before us now.

The issue remaining in this appeal is whether the district court correctly stated the law when it instructed the jury that "for a protected activity to be a contributing factor, it must have either alone or in combination with other factors *tended to affect in any way* UBS's decision to terminate plaintiff's employment."  Joint App'x 1389-90.

## II.  STANDARD OF REVIEW

"[W]here the challenging party objects to the charge at trial, we review the instruction *de novo*.  An instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury of the law."  *Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021) (quotation marks omitted).  Even when an instruction is erroneous, we do not reverse if we are "convinced that the error did not influence the jury's verdict."  *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019) (quotation marks omitted).

## III.  DISCUSSION

UBS argues that it preserved its objection to the district court's instruction, that the instruction was erroneous, and that the error was not harmless.  We address each contention in turn, beginning with a discussion of the statutory scheme and jury instruction.

7

A.     Legal and Procedural Context

18 U.S.C. § 1514A states that no covered entity "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee."

An action to enforce § 1514A is "governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code," which establishes a burden-shifting framework. 18 U.S.C. § 1514A(b)(2)(C). Under that framework, "a whistleblower . . . bears the initial burden of showing that his protected activity 'was a contributing factor in the unfavorable personnel action alleged in the complaint.'" *Murray*, 601 U.S. at 26 (quoting 49 U.S.C. § 42121(b)(2)(B)(iii)). If the plaintiff clears this hurdle, "[t]he burden then shifts to the employer to show" by clear and convincing evidence "that it 'would have taken the same unfavorable personnel action in the absence of the protected activity.'" *Id.* (quoting 49 U.S.C. § 42121(b)(2)(B)(iv)).

Here, the district court held a charge conference to propose jury instructions explaining SOX's burden-shifting framework. At the charge conference, the court proposed telling the jury that a contributing factor was one that "tended to affect in any way UBS's decision to terminate plaintiff." But UBS objected at the charge conference and again afterward in a letter to the court, explaining that the instruction should instead say that a contributing factor is one that "caused or helped cause" the termination. The district court overruled UBS's objections and instructed the jury that "[f]or a

8

protected activity to be a contributing factor, it must have either alone or in combination with other factors tended to affect in any way UBS's decision to terminate plaintiff's employment." Joint App'x 1389-90.

During deliberation, the jury sent the court a note stating: "It says 'tended to affect in any way UBS's decision.' What is UBS here? Is it a) the person w/ the final decision? Or b) people who contributed to the decision formally or informally? C) contributed actively, i.e. 'fire him' or inactively, i.e. 'I'm not fighting for him.'" The district court suggested responding that the jurors "ought to consider who had knowledge of the protected activity and did anyone with knowledge of the protected activity, because of the protected activity, affect the decision to terminate Mr. Murray's employment." Joint App'x 1415. UBS's counsel said she was "concerned that [the jury's] question reflects a confusion about what 'tended to affect in any way' means," but that UBS "would be comfortable with the formulation your Honor proposed a moment ago." Joint App'x 1416.

The court's actual supplemental instruction was slightly different from the one it proposed. It "refer[red]" the jury to "pages 21 and 22 of the [original] charge," which contained the initial instruction, and it told the jury to consider whether "anyone with that knowledge of the protected activity because of the protected activity affect[ed] in any way the decision to terminate Mr. Murray's employment." Joint App'x 1418.

B.     UBS Preserved Its Objection

UBS preserved its objection to the district court's instruction. An objection to jury instructions is valid "so long as it is clear that the

9

trial judge was informed of possible errors in the charge and was given an opportunity to correct them." *Ashley*, 992 F.3d at 142 (quotation marks omitted). UBS objected to the instruction twice, once at the charge conference and then again afterward in a letter to the court. That was enough to preserve the objection.

Murray argues that UBS failed to preserve the objection because it did not object to the supplemental instruction. Where there is a supplemental instruction, "[t]he law of this Circuit requires parties to make a precise objection to the supplemental instruction" as well as the original instruction. *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) (quotation marks omitted). But "a failure to object after a charge is given is excused where . . . a party makes its position clear . . . and the trial judge is not persuaded. A further attempt to object need not be undertaken [when] it would be without any reasonable possibility that the trial court would change its mind." *Girden v. Sandals Int'l*, 262 F.3d 195, 202 (2d Cir. 2001).

Under the circumstances here, we conclude that any further objection was unnecessary. In light of UBS's two previously overruled objections, further objection would have been futile. *See United States v. Cabrera*, 13 F.4th 140, 149 (2d Cir. 2021) ("Counsel need not pester the judge to preserve the objection.").[1]

---

[1] The "affect in any way" language of the district court's supplemental jury instruction did mirror language that UBS had at one point proposed. Joint App'x 91. But UBS's later objections "made clear to the trial court," *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 387 (2d Cir. 2020),

C.      The Contributing Factor Instruction Was Erroneous

UBS's objection was meritorious because the contributing factor instruction was doubly overbroad.  First, the words "tended to" "increase[d] the level of abstraction such that a jury might look beyond whether the whistleblowing activity actually caused the termination to whether it was the sort of behavior that would tend to affect a termination decision."  Murray, 43 F.4th at 259 n.4.  Second, the phrase "affect in any way" allowed the jury to consider effects that did not contribute to Murray's termination.

1.      *Statutory Text*

"In interpreting any statute, we start with the plain meaning of the text, and absent any ambiguity, we end there too."  *Wilson v. United States*, 6 F.4th 432, 435 (2d Cir. 2021).  Here, § 1514A makes it illegal to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment *because of* any lawful act done by the employee."  18 U.S.C. § 1514A (emphasis added).  A termination is not *because of* whistleblowing just because whistleblowing has a *propensity* to lead to termination.  For a termination to be "based on protected whistleblowing activity," whistleblowing must have actually been at least "partly responsible for" the adverse employment action.  *Murray*, 601 U.S. at 37 (cleaned up).

_____

that UBS had rejected the position that it was "enough for protected activity to 'affect' a termination," Joint App'x 3030.

This reading is consistent with the statute's burden-shifting framework, under which a "whistleblower bears the burden to prove that his protected activity 'was a contributing factor in the unfavorable personnel action alleged in the complaint.'" *Id.* at 27 (quoting 49 U.S.C. § 42121(b)(2)(B)(i)). The ordinary meaning of a "contributing" factor is one that has "a share in bringing about a result." *Id.* at 37 (cleaned up).

The district court's instruction conflicted with the statutory text. Whistleblowing may "tend to affect" termination generally, without actually being partly responsible for *a particular* plaintiff's termination. *See* Merriam Webster's Collegiate Dictionary 1287 (11th ed. 2020) (defining "tend" as "to exhibit an inclination or tendency"); *id.* (defining "tendency" as "a proneness to a particular kind of . . . action"). And whistleblowing may also "affect" a termination "in any way" without playing a part in making it happen. For example, if a company consults counsel to weigh the risk of a potential lawsuit before terminating a whistleblowing employee, then whistleblowing could be said to have "affected" that termination by "produc[ing] an . . . alteration in" how it came about, *id.* at 21 (defining "affect"), even if the decision to terminate was not "based on whistleblowing—not even a little bit." *Murray*, 601 U.S. at 37 (cleaned up).

Even if we did "not think it likely" that the jury took the court's instruction literally, "we cannot say it did not occur." *Paolillo v. Dresser Indus., Inc.*, 865 F.2d 37, 40 (2d Cir. 1989). The overbreadth of the charge created an impermissible "risk" that "a jury member could

12

[have] consider[ed] himself bound to follow" an incorrect interpretation of the law. *Pope v. Illinois*, 481 U.S. 497, 501 n.3 (1987); *see also Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1534 n.7 (2d Cir. 1991) (explaining that "the proper inquiry" is what "might have" occurred, not whether the jury "necessarily" applied the wrong standard).[2]

Our conclusion here reflects our review of jury instructions interpreting other employment discrimination statutes. In our past cases, we have required jury instructions to be precise about the influence that a protected trait must produce and the level of abstraction at which the jury should assess whether that influence occurred. *See Paolillo*, 865 F.2d at 40 ("[T]he court's use of the word 'real' was confusing in that it failed to explain that age need not be the principal reason for appellee's decision, but only a [factor that made a difference]."); *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29-30 (2d Cir. 1997) (charging jury to assess employee's qualifications based on "the

---

[2] The dissent posits that we review jury instructions by assessing "whether the instructions 'would have conveyed to a reasonable juror the relevant law.'" *Post* at 2 (quoting *United States v. Gabinskaya*, 829 F.3d 127, 132 (2d Cir. 2016)). But the dissent omits the first half of the sentence it quotes, which in full, says we "determine whether [the charge] *adequately reflected the law and* would have conveyed to a reasonable juror the relevant law." *Gabinskaya*, 829 F.3d at 132 (emphasis added).

The contributing factor instruction was erroneous because its breadth did not "adequately reflect the law." *Id.* That was error enough. We need not consider whether, as understood by a "reasonable juror," the instruction was *also* "ambiguous and therefore subject to an erroneous interpretation." *Boyde v. California*, 494 U.S. 370, 380 (1990).

legitimate expectations of *an employer*" was error because qualification is properly assessed "in accordance with *the particular employer's* criteria" (emphasis added)).

Here too, the contributing factor instruction was imprecise about the influence that whistleblowing needed to produce ("affect" versus "contribute to") and the level of abstraction at which to assess whether that influence occurred ("tended to" versus "actually did"). So the charge did "not adequately inform the jury of the law." *Ashley*, 992 F.3d at 142 (quotation marks omitted).

### 2. *Murray's Argument*

Murray responds by pointing to out-of-circuit cases that describe a "contributing factor" as something that "tends to affect in any way" a termination decision.[3] But none of these cases considered whether "tended to affect in any way" was proper language for a jury instruction. And we have "cautioned that trial judges should not import uncritically language . . . developed by appellate courts for use by judges." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000) (cleaned up); *see also Renz v. Grey Advert., Inc.*, 135 F.3d

---

[3] *See, e.g.*, *Araujo v. N.J. Transit Rail Ops., Inc.*, 708 F.3d 152, 158-59 (3d Cir. 2013); *Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 348-49 (4th Cir. 2014); *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008); *Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *9 (6th Cir. Dec. 2, 2022); *Addis v. Dep't of Lab.*, 575 F.3d 688, 691 (7th Cir. 2009); *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014); *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1195 (9th Cir. 2019); *Miller v. Inst. for Def. Analyses*, 795 F. App'x 590, 597 (10th Cir. 2019); *Majali v. U.S. Dep't of Lab.*, 294 F. App'x 562, 566 (11th Cir. 2008); *Marano v. Dep't of Just.*, 2 F.3d 1137 (Fed. Cir. 1993).

14

217, 223 (2d Cir. 1997) ("[P]rior decisions of this Circuit using [a] phrase" did not make that phrase a proper jury instruction because "the question [in those cases] was whether *summary judgment . . .* was properly granted. We were not considering the proper wording of a jury charge.").

Here, even if the district court's instruction were defensible as a matter of "legal jargon," the proper standard was not "readily understood by laymen." *United States v. Christmann*, 298 F.2d 651, 653 (2d Cir. 1962). In common parlance, a tendency to affect is a theoretical "proneness" to "produce an . . . alteration." *See* Merriam Webster's Collegiate Dictionary 21, 1287 (11th ed. 2020). SOX, however, requires an *actual* effect that *helps bring about a result*.[4]

---

[4] We are not persuaded that it is correct *in any sense* to describe a "contributing factor" under SOX as a factor that "tends to affect" termination "in any way." Only three of the cases Murray cites interpreted SOX. *See Feldman*, 752 F.3d 339; *Allen*, 514 F.3d 468; *Lockheed Martin Corp.*, 717 F.3d 1121. And those three cases all followed *Marano v. Dep't of Just.*, 2 F.3d 1137 (Fed. Cir. 1993), which interpreted the Whistleblower Protection Act ("WPA")—a statute with a broader contributing factor requirement. *See* 5 U.S.C. § 1221(e)(1) (allowing WPA plaintiffs to "demonstrate that [whistleblowing] was a contributing factor" by merely showing that "the official taking the personnel action knew of the [whistleblowing]" and "the personnel action occurred within a [reasonable] period of time" thereafter). For the reasons discussed above, *see supra* at 11-14, even if a contributing factor under other employment discrimination statutes is a factor that "tends to affect employment in any way," the same is not true under SOX.

15

### 3.    *The Supplemental Instruction*

After instructing the jury that a contributing factor need only have "*tended to* affect" Murray's termination "in *any way*," the court later "refer[red]" the jury to that initial instruction and told it to consider whether whistleblowing "affect[ed] in any way the decision to terminate Mr. Murray's employment." This supplemental instruction did not cure the initial instruction's error. When "the original and supplemental charges [are] considered together," the collective impression was still erroneous. *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 119 (2d Cir. 1999).[5]

Although the district court's supplemental instruction did not repeat the "tended to" language from its initial instruction, the court also did not "clearly . . . correct[] its mistake." *Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994). Rather, the court "embedd[ed its initial error] in the supplemental instruction," *Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 162 (2d Cir. 1998), by "refer[ring]" the jury to the part of "the [original] charge" with the "tended to" language. Joint App'x 1418.

---

[5] The dissent argues that the district court's jury charge spanned fifty-seven hundred words, and no reasonable juror would be "so myopic as to be knocked off course by six words." *Post* at 6. But the initial and supplemental instructions were the only times the district court defined what a "contributing factor" meant. Even "a single ruling can vitiate an entire charge if it is on a vital issue and is misleading." *Franks v. U.S. Lines Co.*, 324 F.2d 126, 127 (2d Cir. 1963).

Moreover, even if the court had not referred the jury back to its initial instruction, the supplemental charge failed to repudiate the "tended to" language. So the initial instruction was not cured by the court's use of slightly different wording in a single subsequent response to the jury's question. *See Hudson v. New York City*, 271 F.3d 62, 70 (2d Cir. 2001) ("[A] court's earlier incorrect statements are [not] necessarily 'cured' so long as the charge contains the correct standard elsewhere."); *Schroble v. Lehigh Valley R. Co.*, 62 F.2d 993, 996 (2d Cir. 1933) ("[T]he instruction about the burden of proof was confused by the prior statement.").

D.    The Instructional Error Prejudiced UBS

Finally, the district court's error was not harmless because it misstated SOX's burden-shifting framework. "[W]here jury instructions create an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to plaintiff's claim, and a new trial is warranted." *Hathaway*, 99 F.3d at 554–55 (citing *Hendricks v. Coughlin*, 942 F.2d 109, 113–14 (2d Cir. 1991)); *see also Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (explaining that an erroneous jury charge cannot be harmless "where the instructional error consists of a misdescription of the burden of proof").

That is especially true here. "[T]he district court itself remarked that this was 'one of the closest cases it ha[d] ever observed.'" *Murray*, 43 F.4th at 262 (cleaned up). In such a close case, we cannot be "convinced," *US Airways, Inc.*, 938 F.3d at 54, that the erroneous contributing factor instruction did not tip the scales.

17

Murray says the erroneous instruction is irrelevant because UBS failed to escape liability at step two of SOX's burden-shifting framework. But this overlooks the different causation standards and burdens of proof at SOX steps one and two. Here, at step two, the jury did not find *clear and convincing* evidence that UBS would have terminated Murray regardless of his whistleblowing. But that does not mean that at step one, the jury found by a *preponderance* of the evidence that whistleblowing was a contributing factor in Murray's termination.

Ultimately, we have no way of knowing what the jury found at step one. And without knowing what the jury actually did, we decline to "engage in pure speculation" based on the dissent's "view of what a reasonable jury would have done." *Sullivan*, 508 U.S. at 281.[6]

## IV. CONCLUSION

The district court's instruction allowed the jury to hold UBS liable without finding that Murray's whistleblowing contributed to his termination. It cannot "be said for certain that [this error] did not cause the jury to apply the wrong legal standard." *Folger Adam Co.*, 938 F.2d at 1534 (citing *Paolillo*, 865 F.2d at 40). We thus vacate the

---

[6] Far from taking a "dim view of the jury," *post* at 6, respecting the role of the jury requires us to be convinced that the jury's verdict was not based on the district court's instructional error. *See, e.g., Chiarella v. United States*, 445 U.S. 222, 236 (1980).

judgment of the district court and remand for further proceedings consistent with this opinion.

MYRNA PÉREZ, *Circuit Judge*, dissenting:

The majority opinion takes a pessimistic view of the jury's grasp of the trial proceedings (and of the English language). Because I think the jury instructions clearly and accurately conveyed Murray's burden, I would affirm the judgment.

This is not our first look at these instructions. In round one, we decided—largely based on our Court's then-recent interpretation of a similar statute—that Sarbanes-Oxley's whistleblower-protection provision requires a jury to find "retaliatory intent" in order to find liability. *Murray v. UBS Sec., LLC*, 43 F.4th 254, 259 (2d Cir. 2022), *rev'd*, 601 U.S. 23 (2024). Interpreting our holding (not unreasonably) as requiring "animus," the Supreme Court unanimously reversed us. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 32–33, 39 (2024).

In round two, UBS now tries to salvage its earlier victory, pressing an argument that we passed on before: that the contributing-factor instruction was fatally ambiguous.[1] This instruction required the jury to determine whether Murray's whistleblowing "was a contributing factor in his termination," meaning that it "tended to affect in any way UBS's decision to terminate [his] employment." J. App'x at 1393; *see also Murray*, 601 U.S. at 37 n.2 (noting that our earlier opinion

---

[1] UBS uses the word "vague," Suppl. Br. at 17, but its argument—and the majority opinion—claim ambiguity. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 31–32 (2012) (explaining the difference).

did not decide this question).  According to UBS, the jury might have found it liable based on the mere occurrence of whistleblowing—something that "tend[s] to affect" firing decisions generally but didn't necessarily do so here.  Or the jury might have thought UBS liable because Murray's whistleblowing caused him to be fired in a different way—on a Monday rather than a Friday, say—even if it didn't make his firing any more likely.

Our task, though, is to decide whether the instructions "would have conveyed to a reasonable juror the relevant law."  *United States v. Gabinskaya*, 829 F.3d 127, 132 (2d Cir. 2016).[2]  And I have trouble envisioning a reasonable juror who would misconstrue this instruction so badly.  Even if a reasonable juror could make such an error, it's clear that the actual jury here did not, and I see no good reason to disturb its verdict.

# I
# Background

In December 2011, while working as a research analyst at UBS, Murray approached his supervisor to report that two of his internal clients—traders on UBS's commercial mortgage-backed securities desk—were improperly pressuring

---

[2] While this standard comes from criminal cases, we have applied it in civil cases as well.  *See, e.g.*, *Miller v. City of New York*, No. 23-93, 2024 WL 3271998, at *3 (2d Cir. July 2, 2024) (summary order).

him to bias or censor his research reports to help the desk's business. Murray's supervisor, Michael Schumacher, told him to keep the trading desk happy. In January 2012, Murray reported that the situation was getting worse. Schumacher again told him to toe the company line, notwithstanding Murray's worry that the conduct was unlawful. Just two days earlier, despite having given Murray a strong performance review, Schumacher had suggested to his own boss that Murray be terminated or transferred to the trading desk, where SEC regulations wouldn't require him to be objective. The trading desk wouldn't take him, and Murray was fired less than four weeks later.

Murray sued UBS under Sarbanes-Oxley's whistleblower-protection provision. At trial, the parties' arguments to the jury on causation focused on a single question: whether UBS fired Murray because of his whistleblowing. Neither party discussed whistleblowing's general tendency to cause firings or indicated that such a showing would be sufficient. Nor did either side suggest that an effect on the manner in which UBS's termination decision was made or carried out—as opposed to the probability that it would decide to fire Murray—was sufficient to meet Murray's burden.

At the trial's conclusion, the court instructed the jury as to that burden:

[I]n order to prove his claim under Section 1514A of the Sarbanes-Oxley Act, plaintiff must prove each of the following four elements by a preponderance of the evidence:

First, that plaintiff engaged in activity protected by Sarbanes-Oxley;

Second, that UBS knew that plaintiff engaged in the protected activity;

Third, that plaintiff suffered an adverse employment action—here, the termination of his employment at UBS; and

Fourth, that plaintiff's protected activity was a contributing factor in the termination of his employment.

J. App'x at 1389–90.

The court then described each element in more detail, concluding with the contributing-factor instruction:

Finally, the fourth element that plaintiff must prove by a preponderance of the evidence is that the protected activity in which he engaged was a contributing factor in his termination. For a protected activity to be a contributing factor, it must have either alone or in combination with other factors tended to affect in any way UBS's decision to terminate plaintiff's employment. Plaintiff is not required to prove that his protected activity was the primary motivating factor in his termination, or that UBS's articulated reasons for his termination—excuse me UBS's articulated reason for his termination was a pretext, in order to satisfy this element.

4

*Id.* at 1393.

The jury found UBS liable.  On appeal, UBS principally argued that liability under Sarbanes-Oxley required retaliatory intent and that the trial court had erred by not instructing the jury on that requirement.  We agreed, citing our Court's recent holding in *Tompkins v. Metro-North Commuter Railroad Co.*, 983 F.3d 74 (2d Cir. 2020), and reasoning that "discrimination" against a whistleblower requires an intent to retaliate.  *Murray*, 43 F.4th at 261.  But the Supreme Court reversed us, finding that a retaliatory-intent requirement would conflict with Sarbanes-Oxley's "contributing-factor burden-shifting framework," which "is meant to be more lenient than most."  *Murray*, 601 U.S. at 35.  Within that framework, Murray needed to prove only that his whistleblowing "ha[d] a share in bringing about" his termination, not that it was a but-for cause or even a motivating factor.  *Id.* at 37.  This low bar "reflects a judgment that personnel actions against employees should quite simply not be based on protected whistleblowing activities—not even a little bit."  *Id.* at 36–37 (alteration adopted and internal quotation marks omitted).

On remand, UBS returns us to the contributing-factor instruction, arguing that six words within it—"tended to affect in any way"—may have caused the jury to hold Murray to an even lower standard than the law requires.  The majority

5

opinion accepts that argument, taking what I think to be an unrealistically dim view of the jury.

## II
## Discussion

Our touchpoint when reviewing a jury instruction is the fictive "reasonable juror." *Gabinskaya*, 829 F.3d at 132; *Miller v. City of New York*, No. 23-93, 2024 WL 3271998, at *3 (2d Cir. July 2, 2024) (summary order). "To assess how a reasonable juror could interpret an instruction, we focus first on the specific language of the given instruction, and then, if that instruction is deficient, examine the entire charge to see if the instructions as a whole correctly comported with the law." *United States v. Jones*, 30 F.3d 276, 283 (2d Cir. 1994) (citing *California v. Brown*, 479 U.S. 538, 541 (1987)).

Put simply, no reasonable juror would interpret the instructions in the way the majority opinion suggests. Nor is a reasonable juror so myopic as to be knocked off course by six words in a charge comprising more than fifty-seven hundred. *See Gabinskaya*, 829 F.3d at 132 ("[T]his Court must look to the charge *as a whole* to determine whether it adequately reflected the law and would have conveyed to a reasonable juror the relevant law." (emphasis added) (internal quotation marks omitted)).

6

# A
## "tended to affect"

Start with the first supposed ambiguity. According to the majority opinion, "[w]histleblowing may 'tend to affect' termination generally, without actually being partly responsible for *a particular* plaintiff's termination." *Ante* at 12 (quoting an uncited source). We don't need to examine the whole charge to see how implausible this reading really is. All we need to do is revert the majority opinion's tense shift (the instruction used "tended," not "tend" or "tends")[3] and read the complete sentence with some minimal context:

> Finally, the fourth element that plaintiff must prove by a preponderance of the evidence is that the protected activity in which he engaged *was a contributing factor in his termination*. For a protected activity to be a contributing factor, it must have either alone or in combination with other factors tended to affect in any way *UBS's decision to terminate plaintiff's employment*.

J. App'x at 1393 (emphasis added).

No reasonable juror would think that Murray could satisfy this element by showing that whistleblowing generally tends to get a person fired, or even that it generally tends to get a person fired by UBS. (Murray would have conclusively failed to meet this burden, since he presented no such evidence at trial.) Rather,

---

[3] The majority opinion uses "tends" instead of "tended" five times. *Ante* at 4, 14, 15 n.4.

this instruction unambiguously conveys the correct law as applied to Murray's suit: to meet his initial burden, Murray must show that his whistleblowing made UBS "even a little bit" more likely to fire *him*. *Murray*, 601 U.S. at 37.

The phrase "tended to affect" is a reasonable, nontechnical way of conveying that burden—that is, of conveying that Murray needed to show that his whistleblowing increased the probability that UBS would fire him, but not that it was a but-for cause of his being fired. If a particular factor "tended to affect" a "decision to terminate" someone, it made the decision to terminate that person more or less likely. When it was specifically a "contributing factor," it made the decision more (rather than less) likely. This is because "tend" means, in its most relevant sense, "to exert activity or influence in a particular direction." *Webster's Third New International Dictionary* 2354 (2002) [hereinafter *Webster's Third*]; *see also Webster's New International Dictionary* 2600 (2d ed. 1960) ("to exert activity or influence in a particular direction; . . . as, such an act must tend to weaken confidence" (italics removed)).

And the phrase "tended to" is commonly used in this way to refer to specific (not general) exertions of influence. *See, e.g.*, *United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022) (Park, J.) ("And the probative value of the evidence was high

8

because it *tended to undermine* Graham's argument that she lacked mens rea." (emphasis added)); *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1105 (2d Cir. 2024) (Menashi, J.) ("[T]he remark '*tended to "show* that the decision-maker was motivated by assumptions or attitudes relating to the protected class.""" (emphasis added) (quoting *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009))).

The majority opinion uses a different definition of "tend"—"to exhibit an inclination or tendency," *ante* at 12 (quoting *Merriam Webster's Collegiate Dictionary* 1287 (11th ed. 2020)).  To be sure, it means that too—as in, "I tend to order the steak" or "he tends to eat a light lunch."  But context matters, and the majority opinion ignores it by forcing an inapt definition (and a tense shift) into a sentence where it makes no sense.  If an event "tended to affect" a particular outcome, it means it "exert[ed] . . . influence in a particular direction," *Webster's Third* at 2354— that is, it made the outcome more or less likely.  I think a reasonable juror would find this to be obvious.

## B
## "affect in any way"

The second supposed ambiguity is no less illusive.  The majority opinion finds that the jury could have heard the phrase "affect in any way" and believed that UBS would be liable if Murray's whistleblowing affected *how* it fired him, even

9

if it did not affect its decision *to* fire him. *Ante* at 12. For instance, the jury might have found UBS liable for consulting its lawyer before giving Murray his notice. *Id.*

Surely a reasonable juror would know that Murray did not sue UBS because of the manner in which he was fired. He sued UBS because he *was* fired. And that is what the instruction conveyed: Murray needed to prove that his whistleblowing "was a *contributing factor* in his termination," that it "tended to affect in any way UBS's decision *to* terminate [his] employment." J. App'x at 1393 (emphasis added).[4]

The phrase "affect in any way" is an appropriate way to convey the multiple routes, both direct and indirect, through which Murray's whistleblowing could have increased the probability of his being fired. UBS could have fired him outright after he reported misconduct. Or it could have transferred him to a different job that was more likely to be on the chopping block. The phrase "in any way" properly encompasses effects resembling the latter situation, which a jury might otherwise improperly disregard. A jury might also reasonably hear "affect

---

[4] In common parlance, the word "contributing" means "has a part in producing *an effect*." *Webster's Third* at 496 (emphasis added). The word "factor" means "something . . . that contributes to the production of *a result*." *Id.* at 813 (emphasis added). And, importantly, the word "affect" means "to produce a material *influence upon* or *alteration in*." *Id.* at 35 (emphasis added).

in any way" to mean "affect to any degree," emphasizing that the effect could be slight. This would also be an accurate statement of the law; Murray satisfies this element if he shows that UBS's decision to fire him was affected by his whistleblowing "even a little bit." *Murray*, 601 U.S. at 37. But "in any way" is *not* reasonably understood to mean "in any way or not at all."

## C
### Context

Semantics aside, the majority opinion's most striking error is focusing on six words to the exclusion of the rest of the jury charge. Our job is to "examine the entire charge to see if the instructions as a whole correctly comported with the law." *Jones*, 30 F.3d at 283; *see also Jones v. United States*, 527 U.S. 373, 391 (1999) ("[I]nstructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions."); *United States v. Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003) ("We review a jury charge in its entirety and not on the basis of excerpts taken out of context.").

The rest of the charge reinforces the correct interpretation of Murray's burden on causation. The trial court described the "contributing factor" burden twice before and once after the six words at issue. First: "[P]laintiff must prove each of the following four elements by a preponderance of the evidence: . . .

11

Fourth, that plaintiff's protected activity was a contributing factor in the termination of his employment." J. App'x at 1389–90. And immediately before the disputed sentence: "[T]he fourth element that plaintiff must prove by a preponderance of the evidence is that the protected activity in which he engaged was a contributing factor in his termination." *Id.* at 1393. And finally: "In sum, for plaintiff to prevail on his retaliation claim under the Sarbanes-Oxley Act, he must prove all four elements of that claim by a preponderance of the evidence: Protected activity, knowledge by his employer, termination of employment[,] and protected activity as a contributing factor in that termination." *Id.* at 1395. These instructions left no room for a reasonable juror to think that UBS could be liable if Murray's whistleblowing was not a "contributing factor"—that is, if it did not make his firing any more likely.

Were this not enough, the charge's summary of Murray's case made no mention of anything at trial—argument or evidence—that would hint at a contrary interpretation:

> Mr. Murray claims that he engaged in activity that is protected under the Sarbanes-Oxley Act when he reported to his immediate supervisor at UBS that certain members of the CMBS business unit had attempted to chill or skew his independent research into CMBS securities, which conduct he contends violated one or

12

more rules or regulations issued by the Securities and Exchange Commission (or SEC) and/or certain federal laws concerning fraud. Mr. Murray further claims that UBS then violated the Sarbanes-Oxley Act by terminating his employment as a CMBS strategist after, *and as a result of*, his reporting of this conduct. Finally, Mr. Murray claims to have suffered economic and noneconomic injuries as a result of UBS's wrongful conduct, for which he seeks damages.

J. App'x at 1387–88 (emphasis added). In other words, Murray never argued to the jury about a general tendency of whistleblowers to get fired, or that UBS was liable for firing him at a different time or in a different way because of his whistleblowing. It was clear that his case was about UBS choosing to fire him because he reported misconduct. This was reinforced throughout the trial court's instructions.

## D
## Prejudice

Finally, we don't need to speculate as to whether the jurors here properly understood the instructions—they just about told us so. Soon after starting deliberations, the jury sent a detailed note to the court requesting, among other things, some clarification of Murray's burden to show causation:

It says "tended to affect in any way UBS's decision…" What is UBS here? Is it a) the person w/ the final decision? or b) people who contributed to the decision

13

formally or informally? c) contributed actively, ie "fire him" or inactively, ie "I'm not fighting for him"

Ct. Ex. 4-3, *Murray v. UBS Sec., LLC*, No. 1:14-cv-00927-KPF, ECF No. 391 at 5 (S.D.N.Y. June 3, 2021).

This question makes two things plain. First, the jury was focused on UBS's decision to fire *Murray*, not on whether whistleblowing generally causes an employee to get fired. And second, the jury was focused on the decision *to* fire Murray, not on the manner in which that decision was made or carried out. It is clear to me that the jury was not acting under either of the misapprehensions animating the majority opinion.

Regardless, the trial court's response would have disabused the jury of any such misapprehensions:

> With respect to your inquiry about the contributing factor element, I refer you to pages 21 and 22 of the charge. As to your options a, b, or c, depending on the facts that you find to be proven by a preponderance of the evidence, it could be any or all of them. You should consider (1) who had knowledge of any protected activity in which Mr. Murray engaged, and (2) did anyone with that knowledge of the protected activity, because of the protected activity, affect in any way the decision to terminate Mr. Murray's employment.

14

Ct. Ex. 7 at 2, *Murray v. UBS Sec., LLC*, No. 1:14-cv-00927-KPF, ECF No. 393 (S.D.N.Y. June 4, 2021).

This response omitted the "tended to" language, and it reaffirmed the jury's understanding that the actual firing decision itself was at issue—"the decision *to* terminate Mr. Murray's employment," *id.* (emphasis added)—not whether UBS did anything irrelevant like "consult[] counsel" before firing him, *ante* at 12.  If anything, the "because of" language in the trial court's response exaggerated Murray's burden, since it suggested that he needed to prove that his whistleblowing was a but-for cause of any act or omission that contributed to his firing.

Nonetheless, the majority opinion says we should not be "convinced" that the jury's verdict for Murray was based on a correct understanding of his burden. *Ante* at 17 (quoting *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019)).  To be sure, we should be vigilant to trial errors that can precipitate unjust verdicts.  But the instruction here was not erroneous.  While the interpretations adopted by the majority opinion would certainly conflict with the law, they are neither grammatically nor logically plausible.  Even if they were, the jury's query made clear that it did not adopt them, rendering them harmless.  In my view,

15

respect for the jury's prerogative—not to mention its intelligence—requires that we not disturb its verdict based solely on fanciful constructions of a six-word phrase.

## III
## Conclusion

When this case first came to us, we thought the trial court had erred by not sufficiently instructing the jury on retaliatory intent. The Supreme Court unanimously held that we were wrong. The majority opinion now maintains the original outcome, but in doing so it forces unreasonable readings onto a perfectly adequate jury instruction.

One of the benefits of life tenure is that we can freely admit when we're wrong. And one of the duties of our office is to do so when we are. Rather than doubling down, we ought to take our lumps and apply the law as it stands, even when it leads us to a new result. The majority opinion reflects a different choice, so I must respectfully dissent.